# SEYFARTH SHAW LLP ATTORNEYS

620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-5507

Writer's e-mail
dkesselman@seyfarth.com

April 15, 2010

**VIA ECF**

Honorable Joanna Seybert
United States District Judge
United States District Court for the Eastern District of New York
Alfonse M. D'Amato Federal Building
100 Federal Plaza
Central Islip, New York 11722-9014

    Re:    Connolly, et al. v. The TJX Companies, Inc. et al.
             Index No. 07 Civ. 3282 (JS) (WDW)

Dear Judge Seybert:

    We represent Defendants The TJX Companies, Inc. ("TJX"), Rick Kaiser ("Kaiser") and Armando Cabrera ("Cabrera") in the above-referenced action. We write in accordance with Your Honor's Individual Motion Practices and pursuant to the Order of Magistrate Judge Wall, dated April 2, 2010, to respectfully request a pre-motion conference with regard to Defendants' anticipated motion for summary judgment. The parties have exchanged Local Civil Rule 56.1 statements, which are enclosed herewith.

    TJX owns and operates T.J. Maxx retail stores that sell discount merchandise, including a store in Kings Park, New York ("the Kings Park location"). Kaiser is the former Store Manager for the Kings Park location and Cabrera is the District Manager responsible for the Kings Park location. In this action, Plaintiffs Eileen Connolly, Paulette Honick, Darlene Lelle and Lorraine Serraino, all of whom were previously employed at the Kings Park location on the store floor, have asserted sixty-three (63) causes of action alleging sexual harassment, discriminatory termination, retaliation, negligent hiring, general negligence, breach of contract, coercion, fraudulent inducement, civil conspiracy, and intentional infliction of emotional distress. As set forth more fully in Defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts, Plaintiffs' grievances stem from the fact that TJX terminated their employment following an investigation into layaway fraud by them. Nevertheless, seeking to avoid the consequences of their own *admitted* misconduct, Plaintiffs attempt to argue that their terminations were the result of unrelated complaints of harassment that were fully investigated and resolved by TJX and that were not even known to the investigator of the fraud. As such, none of these claims can survive summary judgment. The facts most essential to Defendants' anticipated motion are summarized below.

BRUSSELS
WASHINGTON, D.C.
SAN FRANCISCO
SACRAMENTO
NEW YORK
LOS ANGELES
HOUSTON
CHICAGO
BOSTON
ATLANTA

12204430v.1

**Lelle's Complaint**

On or about January 24, 2005, Lelle met with Cabrera to discuss what she called a "frustrating" experience. At the meeting, Lelle complained that Kaiser had made "inappropriate comments repeatedly and has made [her] feel uncomfortable" and that Kaiser "thinks he's just joking around but [she thinks] he has a warped sense of humor and focuses on foul things." In addition, Lelle stated that she thought it was "very difficult to work effectively under these conditions and felt it necessary to voice these feelings."

TJX investigated Lelle's allegations just two days later, on January 26, 2005. TJX interviewed each of the Plaintiffs, other Associates, an Assistant Store Manager and, ultimately, Kaiser. Kaiser admitted to Human Resources, that he sometimes made jokes or comments that could be deemed inappropriate. As a result, TJX issued Kaiser a Final Warning threatening termination for any transgressions. Further, TJX instructed Kaiser to promptly hold a meeting with all of the store's employees at which he was to: (i) apologize for any inappropriate comments; (ii) direct that all future conversations in the store be business-related; (iii) direct that all employees cease engaging in any inappropriate conversations; and (iv) thank the employees for utilizing TJX's open door policy. Kaiser held the meeting on February 1, 2005 and apologized as directed. Thereafter, Cabrera visited the store on a weekly basis and confirmed that Kaiser's objectionable conduct had ceased.

**Plaintiffs' Admitted Layaway Fraud**

T.J. Maxx's Loss Prevention Department is responsible for minimizing the extent to which the Company loses money due to theft or loss of T.J. Maxx assets. In early 2005, Karen Hennessey ("Hennessey"), a Loss Prevention Regional Analyst, identified a pattern in one of her daily reports that raised a suspicion of possible violation of the Company's layaway policy by Kings Park employees. Because the report did not contain employee names, Hennessey did not know which particular employees were implicated. Store management was not apprised of this investigation, nor was it required to be so apprised. Hennessey's investigation into violations of the layaway policy was unconnected to and without knowledge of Lelle's complaint, and there is no evidence to the contrary.

As a result of this suspicious activity, Loss Prevention commenced an investigation, reviewing the patterns of layaways, markdowns and purchases of all employees in the Kings Park location. The investigation revealed that Plaintiffs, in addition to Carol Hobel ("Hobel") and Phyllis Ferraro ("Ferraro") regularly rolled over layaway merchandise in thirty day intervals in an effort to accumulate markdowns to purchase items at a significant discount. This conduct violated stated Company policy and resulted in financial loss to the Company.

Plaintiffs and Hobel were each individually interviewed on June 23, 2005 by two members of the Loss Prevention team, and in the presence of an interviewer and a witness, each *admitted* to engaging in the layaway fraud, signed a written statement to that effect, and with the exception of Lelle, executed a promissory note to repay the loss to TJX. As a result of their admitted misconduct, TJX immediately terminated their employment. Importantly, Ferraro would likewise have been terminated had she not already abandoned her job after learning of the



Honorable Joanna Seybert
April 15, 2010
Page 3

investigation. Neither Cabrera or Kaiser played any role in determining whether Plaintiffs would be terminated; because they violated policy and caused a loss, their termination was automatic.

The principal grounds for Defendants' anticipated motion are as follows: First, Plaintiffs cannot establish a hostile work environment because the complained of conduct was neither severe nor pervasive, or perceived as such. Further, even assuming, arguendo, that Plaintiffs could establish a hostile work environment, there is no basis for imputing liability to TJX. To establish a hostile work environment, Plaintiffs must demonstrate "that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996). Here, however, TJX acted swiftly to investigate Lelle's complaint, took remedial action, and eradicated the conduct, vitiating any ability for Plaintiffs to hold TJX vicariously liable. Plaintiffs also cannot contend that TJX is liable because it did not discharge Kaiser. Wahlstrom v. Metro-North Commuter Railroad Co., 89 F. Supp. 2d 506, 526 (S.D.N.Y. 2000) (stating that "nothing gives [plaintiff] the right to choose the penalty for her harasser"). A written warning, which is what TJX issued to Kaiser here along with requiring him to formally apologize to the store, is sufficient if it effectively conveys that further harassment will not be tolerated. Kotcher v. Rosa & Sullivan Appliance Ctr., 957 F.2d 59, 63 (2d Cir. 1992).

Second, Plaintiffs cannot establish a *prima facie* case of retaliation in the absence of any evidence that TJX terminated the Plaintiffs *because of* Lelle's complaint about Kaiser rather than Plaintiffs' admitted involvement in fraud, which is clearly a business-related concern. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166 (2d Cir. 2005). Here, Loss Prevention investigated Plaintiffs' violation of the layaway policy without store involvement and without knowledge of Lelle's complaint. This undisputed fact defeats any inference of causation.

Third, each of Plaintiffs' other "kitchen sink" claims fail as a matter of law for a variety of reasons including, that Plaintiffs admittedly engaged in the conduct for which they were terminated, that certain claims are barred by the statute of limitations, that statutory remedies preempt certain of their common-law claims, and that there are no facts capable of supporting their other generic claims.

Finally, TJX seeks summary judgment with respect to its counterclaims against Plaintiffs Connolly and Honick because each has admitted to engaging in layaway fraud and has executed promissory notes pledging to repay the loss they caused to the Company.

We appreciate Your Honor's consideration of this request. Please do not hesitate to contact us should the Court have any questions.

                                                Respectfully submitted,

                                                SEYFARTH SHAW LLP

                                                /s/ Dov Kesselman

cc:    Larry McCord, Esq.

12204430v.1