*Law Office of Larry J. Mc Cord and Associates, LLC*
*1291 Straight Path*
*West Babylon, New York 11704*
Phone: 631-643-3084 Fax: 631-491-8554

April 21, 2010

**VIA ECF**
Honorable Joanna Seybert
United States District Court Judge
United States District Court for the Eastern District
100 Federal Plaza
Central Islip NY 11722-9014

                                      Re: Connolly et al v. Kaiser, Cabrera et al
                                           Index No 07 CV3282 (JS) (WDS)

Dear Judge Seybert:
This office represents Eileen Connolly, Darlene Lelle. Paulette Honick and Lorraine Serraino, plaintiffs in the above matter. This letter is in reply to the letter from defendants counsel dated April 15, requesting a pre motion conference prior to a summary judgment motion. Plaintiffs oppose the assertions of counsel that are at odds with the facts and the conclusions that follow.

This is an action by plaintiffs Eileen Connolly, Darlene Lelle, Paulette Honick and Lorraine Serraino against their former employer, defendant T.J. Maxx, sued as The TJX Companies, Inc. and the employment supervisors, defendants Rick Kaiser and Armando Cabrera. Plaintiffs' claims are based on sexual harassment by defendant Rick Kaiser in the work place and the wrongful termination of employment as retaliation for the complaints. Plaintiffs' causes of action are based on Title VII of Civil Rights act of 1964, 42 U.S.C. Sec. 2000e <u>et</u> <u>seq.</u>

 Plaintiffs allege that because they had complained of sexual harassment in the workplace, they were terminated. Defendants allege that: the termination was unrelated to plaintiffs' complaints but due to violation of store policy by rolling over layaways and taking advantage of markdowns, resulting in a loss to the store. Further, that plaintiffs' admitted in writing that what they did was wrong and agreed to repay the store. Plaintiffs contend that the loss to the store claim rests on a bogus foundation, that their statements were fraudulently induced under coercive conditions as part of the pretext to conceal the real purpose of the firing, which was retaliation.

                                                        Background
Each plaintiff was employed as a Sales Associates at the T.J. Maxx store in Kings Park, N.Y, for an average of 5-6 years. During that time each plaintiff was regarded by management as a "very good associate". Defendant Rick Kaiser was store Manager and defendant Armando Cabrera was the District Manager for TJ Maxx. The store had a lay away plan where customers, including employees, could put an item on 'lay away' with a small deposit. At the end of the layaway period, 30 days, the customer or an employee would buy the item by paying the balance, or if not purchased, the item was returned to stock. For years, plaintiffs used the lay away plan. A Sales Associate could not process their own lay away. It would be processed by other personnel.

On one occasion plaintiff Lelle put an item on layaway but as the 30 day period was running out she was unsure about completing the purchase. She was told by the Assistant Manager that she could renew, or "roll over" the lay away for another 30 days, which she did. Other employees including the other plaintiffs, followed suit. The practice was approved by every manager, many of whom, including defendant Rick Kaiser, rolled over their own purchases.

Plaintiffs' allege that for many months Kaiser acted improperly by engaging in conduct that was offensive and sexually oriented. To name a few instances, Kaiser would: comment about the size of customers' breasts and bra sizes, make remarks of a sexual nature about the models shown on packages of mens' underwear, and wear womens' underwear over his work clothes and invite employees into his office to observe him. There can be no doubt that Kaiser's entirely unwelcome actions constituted sexual harassment and created a hostile workplace environment.

By January 2005, plaintiff Lelle could no longer tolerate Kaiser's actions and approached an Assistant Manager with her complaints. She was advised that she could file a complaint with District Manager, Cabrera, but that if she did, the Loss Prevention Dept. would come into the store and "tear it apart" to find something wrong. Lelle was unconcerned as she had done nothing wrong and had no reason to fear Loss Prevention. Lelle sent a written complaint about Kaiser to Cabrera. Immediately, the Human Resources Department investigated. During the investigation the other plaintiffs came forward with their complaints. As a result defendant Kaiser had to apologize and promise to stop his improper actions. Human Resources promised to return to the store to monitor the situation, but never did. When defendant Cabrera made his weekly visits to the store, he avoided plaintiffs and never inquired about Kaiser's conduct. Although Kaiser's actions abated somewhat, they did not stop.

Within days of the apology, Loss Prevention <u>just</u> <u>happened</u> (emphasis supplied) in a daily report, to identify and a pattern of "suspicious activity" in the Kings Park store. In due course, Loss Prevention came to the store and, just as predicted by the Assistant Manger, began searching to find something wrong. They scrutinized all lay away transactions and <u>just</u> <u>happened</u> to target plaintiffs and two other employees, Carol Hobel and Phyllis Ferraro for 'suspicion of possible violations of layaway policy'. According to plaintiffs, it was just a matter of time until the "pretext hoax", would be unleashed. After several days, Loss Prevention called plaintiffs in to "discuss layaways". The discussion soon became accusatory. In order to launch the pretext, Maxx's in-house detectives claimed there was a store policy that limited employee layaways and that plaintiffs violated the policy thereby causing a loss to the store. Plaintiffs explained they didn't know of the policy and that all transactions were approved.

Now that the seed of wrongdoing had been planted, the detectives nourished it by adding a large measure of pressure. Plaintiffs were isolated, and confined in a room where they were not free to leave or to make calls. Detectives applied continuing pressure and let plaintiffs know that their jobs were at stake if they didn't cooperate. It worked. Plaintiffs, still stunned from the shock of the accusations, and in the fraudulently induced, desperate belief they could save their jobs, told detectives what they wanted to hear. Except for Lelle, plaintiffs agreed they were wrong and would repay TJ Maxx. No plaintiff admitted fraud.

As the pieces were falling into place, it was time to seal the pretext with written statements. In what amounts to a form of extortion by means of economic duress (see McKinney's New York Penal Law 155.05) the detectives dictated statements, which the plaintiffs were required to sign. When one plaintiff did not write the version that was dictated, her statement was crumpled up by the detective and a new one was directed. Once all statements were signed, and contrary to assurances that the matter would be concluded with no loss of their jobs, the trap was sprung. Each plaintiff was summarily fired. Without question, any statement produced under such (possibly criminal) circumstances, is worthless. Instead, the statements are the 'smoking gun' of a well orchestrated scheme to create the pretext for the termination.

Reply to "Loss to the Store". A markdown is a seller's offer to take less for an item in the hope of making a sale. While a seller may net less profit than expected, by no stretch of reasoning can a seller claim (as defendants urge) that by accepting the markdown, a buyer has caused the seller to sustain a loss. Logic dictates that so long as the store is willing to sell for less, no amount of rolling over can result in an employee-caused loss. TJ Maxx's defense is obviously based on deception. The empty-shell argument relies on the fallacy that waiting for prices to drop is wrong. The next part of the subterfuge is to create the false impression that renewing layaways created a basis for a loss to the store. That ploy is exposed by common sense, which dictates that if the employee did not roll over the layaway and it went back to stock, it was still available to the employee and all other buyers at the lower price. As the markdowns continued, the item would still be for sale to all buyers at the lower price. It is abundantly clear that 'rolling over' is completely irrelevant to the outcome. Offering this ruse is, patently disingenuous.

Fraud. The only fraud that emerges is the fraud which Maxx perpetrated upon the plaintiffs when it's agents: deceived them as to their true purpose; then, after pressuring and depriving them of their freedom, fraudulently claimed plaintiffs had caused a loss; then, fraudulently deceiving them that if they admitted wrongdoing they would save their jobs. As for Carol Hobel, although she did not file a complaint, she had to be "eliminated" to give credence to the pretext scheme. As for Phyllis Ferraro, once she learned of Maxx's outrageous actions she resigned in protest.

Plaintiffs have established a prima facie case of Sexual Harassment in the workplace which remained despite the admission and apology of defendant Kaiser. Human Resources failed to return to the store as promised, and defendant Cabrera avoided plaintiffs. As to the Wrongful Termination claim, plaintiffs have met their burden of showing that the reason given for being fired was pretextural. Defendant Maxx was known to retaliate when complaints were made; plaintiffs were targeted soon after the complaints; the loss to store claim cannot be substantiated; plaintiffs never knew of the policy which they allegedly violated; any policy that did exist was overridden by management; that despite excellent work records, they were given no warning or second chance; despite their agreement to admit wrong and repay the store to save their jobs, their firing is proof of defendants animus and excludes any reason other than retaliation.

Respectfully submitted,

Larry J. McCord

cc: Seyfarth & Shaw Attorneys for Defendants