# EXHIBIT B

# Law Office of Larry J. McCord and Associates, LLC, LLC

*1291 Straight Path*
*West Babylon, New York 11704*
Phone: 631-643-3084 Fax: 631-491-8554

*Larry J. McCord, Esq.*

*Mary-Bath Abbate, Esq.*
*April Rosenblum, Paralegal*

May 6, 2010

Dov Kesselman, Esq.
Seyfarth Shaw LLP
620 Eighth Ave.
New York, NY 10018-1405
dkesselman@seyfarth.com

Re: Connolly et al v. Kaiser, Cabrera et al
Index No 07 CV3282 (JS) (WDS)

Dear Mr. Kesselman,

The following is a summary of a proposed letter motion which will be presented to Judge Seybert, if the grievance set forth herein is not satisfactorily resolved by May 11, 2010. As a courtesy, prior to making the motion we are giving your office the opportunity to address this matter and avoid such action.

Please communicate your response as early as possible.

Very truly yours,

Larry J. McCord, Esq.
Attorney for Plaintiffs:
Connolly, Honick, Lelle and Serraino

# *Law Office of Larry J. Mc Cord and Associates, LLC*
*1291 Straight Path*
*West Babylon, New York 11704*
Phone: 631-643-3084 Fax: 631-491-8554

*Larry J. McCord, Esq.*

*Mary-Bath Abbate, Esq.*
*April Rosenblum, Paralegal*

May __, 2010

**VIA ECF**
Honorable Joanna Seybert
United States District Court Judge
United States District Court for the Eastern District
100 Federal Plaza
Central Islip NY 11722-9014

Re: Connolloy et al v. Kaiser, Cabrera et al
Index No 07 CV3282 (JS) (WDS)

Dear Judge Seybert,
We regret that it is necessary to contact the Court for relief that is required to overcome any prejudice to this proceeding which defendants counsel may have injected.

Background

This is an action by plaintiffs Eileen Connolly, Darlene Lelle, Paulette Honick and Lorraine Serraino against their former employer, defendant T. J. Maxx, and their employment supervisors defendants Rick Kaiser and Armando Cabrera.

Plaintiffs allege they were sexually harassed at work by Store Manager, Rick Kaiser and that after they filed complaints, TJ Maxx retaliated by firing them. Defendants' allege that any sexual harassment that occurred was remedied and that plaintiffs' termination was due to misconduct in renewing layaway purchases, which caused a loss to the store. Defendants rely on statements plaintiffs gave to store detectives stating that what they did was wrong. Plaintiffs' claim they actually did nothing wrong, that all transaction were approved by management, and that they were misled to believe they would save their jobs only by giving the statements.

By letter of April 15, 2010, to your Honor, (filed as Document 45) Defendants' counsel Dov Kesselman, Esq., requested a Rule 56 pre motion conference. A copy of the letter is annexed as "Exhibit A" In the letter counsel used the term "fraud", without foundation or any particularity, to describe the actions of the plaintiffs which caused them to be terminated. Worse, and also without foundation, counsel devoted more than half a page, headlined: Plaintiffs' Admitted Fraud, to defend the terminations. Since however, there was never any fraud, counsel could not cite any instance where such fraud was ever committed or admitted. Plaintiffs view the letter as an outrageous attempt to portray them as confessed thieves, in the eyes of the court.
The absence of wrongdoing is unwittingly revealed by Defendants on Page 2, of the letter. In paragraph 4, lines 4, 5,6  it states "… that plaintiffs regularly rolled over layaways to accumulate markdowns to ***purchase*** (emphasis supplied) items at a significant discount …  which

Page 2

… resulted in a financial loss to the Company". This "grievance" shows that plaintiffs did nothing more than to wait for a price reduction prior to making a purchase. At this very instant the same thing is happening millions of times. Waiting for a price to go down is a universal practice which each of us does whenever possible. The fact that plaintiffs were employees is entirely irrelevant, and by no stretch of tortured reasoning can the layaways amount to fraud.

Without regard to the obvious, counsel nevertheless, persisted in stressing "fraud" throughout the letter. On April 15, the case was scheduled as a Bench trial with your Honor as the trier of facts. The only purpose of the fraud portrayal would be to mark each plaintiff as an admitted thief, before the case, or summary judgment motion, ever started. (Due to an intervening order of the Court dated April 28, the case will now be tried by a jury.) The pre conference letters were your Honor's introduction to the case, and first impressions of the parties and their claims would undoubtedly, be formed. The attempt to influence those impressions with inflammatory, false charges about admitted fraud, is indeed troubling.

"Fraud" is such a pejorative term that it has its own rule to prevent misuse. FRCP Rule 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." (emphasis supplied) The purpose of the rule is to help prevent a person from defaming another without spelling out the specific circumstances surrounding the fraud. Although a pleading is not involved here, counsel's false claim of "admitted fraud" is per se defamatory, and clearly violates the spirit and intent of the Rule.

Plaintiffs are particularly aggrieved at counsel's disregard of Rule 11(b) (3) FRCP, which provides: (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper whether by signing, filing, submitting, or later advocating it, an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

   (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Unquestionably, counsel has represented that … the factual contention: "admitted fraud" does have evidentiary support. No support of any kind is offered however. Moreover, counsel is unable to hope that such support will occur after further investigation since Defendants have already discovered all aspects of the termination issue. Counsel has violated Rule 11(b) (3) to the great detriment of plaintiffs and should be sanctioned as provided by the Rules.

Since fraud is the term defendants rely on, a definition will show that it has no application to any of the plaintiffs. Fraud - Basic elements a) A representation made with the knowledge that it is false, and b) made for the purpose of inducing another to rely on the representation, c) the other party does rely on the false representation, and, d) by reason of such reliance, is damaged. As applied here, plaintiffs, as employees, bought items on layaway at regular and markdown prices set by TJ Maxx. They made no representations to any person. They concealed nothing. All their sales were approved by management. Instantly, any type of fraud charge disappears.

Exposure of Fraud, "Loss to the Store", Myth

When a seller reduces the price of an item it is <u>factually</u> <u>and</u> <u>legally</u> <u>impossible</u> to be doing anything fraudulent by accepting the markdown price. It does not matter if the item was put on layaway once or 100 times or with the intent to get the lowest price. As the following illustration shows, 'loss to the store' is nothing but a smokescreen for the retaliatory firings.

Illustration: In January, two employees A & B, and a member of the public, customer, C, wish to buy certain glassware selling for $50. Employee A, puts the item on layaway and rolls it over for the next 3 months. Employee B and customer C do nothing. For the next 3 months the item drops $10 per month so that by April it is reduced to $20. Employee A, completes the layaway, and buys the item for $20, saving $30. Employee B and customer C, also buy the item for $20 saving $30 each. With no difference in the outcome, the store sold the glassware for the same reduced price to both employees and a retail customer, netting the same on each sale. This is irrefutable proof that the layaway and rollovers are completely irrelevant and immaterial. A claim of loss based on layaways, rollovers or any combination is, on its face, ludicrous.

The argument turns on the absurd since the only certain way for a loss to occur is when an item is ***not*** sold. Except for consignment sales, unsold goods are a guaranteed loss to any vendor. By purchasing items even at markdown prices the buyer has prevented the seller's worst nightmare, unsold inventory! If the Court will pardon the comparison, the notion that a buyer caused a loss to the seller when buying at the reduced price, would not even fly at the Mad Hatter's Tea Party.

Termination Day and Statements

Plaintiffs were working women trying to support their families. They had superior performance records over a combined period of 20 years. The fabricated 'loss' charge was used by TJ Maxx's to confront and frighten them into eventually believing it may have been valid. Dazed by the accusations and reeling with panic, they agreed to a solution that they thought would end the torment and salvage their jobs. Had they known however that they would be fired as soon as they gave the statements, none would have been given. The proof lies in their naïve pledge to refrain from "doing this (rolling over layaways) in the future", revealing their duped belief that they would have a future at TJ Maxx. It is obvious that the firings were retaliatory. The pretext of misconduct had to be created. To make that happen, the extorted statements were essential. Instead of a shield to be relied upon by defendants at trial, plaintiffs believe the statements will become a sword of retribution which the jury will use to mete out justice.

Plaintiffs demand that Defendants' counsel send an immediate retraction to the Court, admitting it was careless with its accusations, disavowing any claim that any plaintiff had engaged in or admitted any fraud, and apologize to the Court, plaintiffs and their counsel for the incident. If the retraction and related statements are not received by plaintiffs counsel and Judge Seybert by the close of business on May --- , 2010, plaintiffs will make a Rule 11(b) (3) violation motion, as well as a motion for sanctions.

Very truly yours,

Larry J. Mc Cord, Attorney for Plaintiffs Connolly, Honick, Lelle, and Serraino