UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   E-FILED

EILEEN CONNOLLY, PAULETTE HONICK,
DARLENE LELLE, and LORRAINE SERRAINO,

                          Plaintiffs,        07-CIV-3282 (JS) (WDW)

      v.

THE TJX COMPANIES, INC., RICK KAISER, and
ARMANDO CABRERA,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Dated: New York, New York
       September 7, 2010

*Of Counsel*:

      Dov Kesselman
      Brian D. Murphy

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

*Attorneys for Defendants*
*The TJX Companies, Inc., Rick Kaiser and Armando Cabrera*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ....................................................................................4

ARGUMENT .........................................................................................................4

I.      SUMMARY JUDGMENT STANDARD ................................................4

II.     PLAINTIFFS CANNOT ESTABLISH THE ELEMENTS OF A
HOSTILE WORK ENVIRONMENT CLAIM (COUNTS 1, 6, 9, 13)..................5

      A.     Mr. Kaiser's Alleged Comments Are Not Sufficiently "Severe or
Pervasive" to Create a Hostile Work Environment ......................................6

      B.     Plaintiffs' Hostile Work Environment Claims Fails As Well
Because the Complained-Of Conduct Was Not Prompted by
Plaintiffs' Sex...............................................................................................12

      C.     TJX's Well-Established Policies to Prevent Harassment And Its
Prompt and Effective Response to Plaintiffs' Complaints Compels
Dismissal of Plaintiffs' Claims....................................................................14

      D.     Plaintiffs' Hostile Work Environment Claims Against the
Individual Defendants Must Be Dismissed..................................................17

III.    PLAINTIFFS' RETALIATION CLAIMS MUST BE DISMISSED....................18

      A.     Applicable Standard.....................................................................................19

      B.     Plaintiffs' Retaliation Claims Should be Dismissed Because
Plaintiffs Cannot Establish a Prima Facie Case of Retaliation..................20

           1.     There is No Evidence that Any Decision-Makers Were
Aware of Plaintiffs' Protected Activity .........................................20

           2.     Plaintiffs Cannot Establish a Causal Connection Between
Their Protected Activity and Their Terminations..........................22

      C.     TJX Terminated Plaintiffs' Employment for the Legitimate and
Non-Retaliatory Reason That They Violated TJX's Layaway
Policy ...........................................................................................................24

D.      There is No Evidence of Pretext or that Retaliation Was, In Fact, the Reason Plaintiffs Were Terminated ....................................................24

E.      There is No Basis for a Retaliation Claim Against the Individual Defendants. .............................................................................................26

IV.     PLAINTIFFS' KITCHEN SINK CLAIMS FOR "DURESS AND COERCION" SHOULD BE DISMISSED............................................................26

V.      PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIMS MUST BE DISMISSED ............................................................................................................29

CONCLUSION....................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Alfano v. Costello,
    294 F.3d 365 (2d Cir. 2002)......................................................................9, 10, 13, 18

Almonord v. Kingsbrook Jewish Med. Ctr.,
    2007 WL 2324961 (E.D.N.Y. Aug. 10, 2007)........................................................22

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)..............................................................................................4, 5

Bailey v. Synthes,
    295 F. Supp. 2d 344 (S.D.N.Y. 2003)......................................................................9

Brady v. Calyon Sec. (USA),
    406 F. Supp. 2d 307 (S.D.N.Y. 2005)....................................................................29

Brennan v. Metropolitan Opera Ass'n,
    192 F.3d 310 (2d Cir. 1999)..............................................................................7, 13

Brown v. Cushman & Wakefield, Inc.,
    2002 WL 1751269 (S.D.N.Y. July 29, 2002).........................................................28

Burlington Indus. v. Ellerth,
    524 U.S. 742 (1998)..........................................................................................14, 17

Butler v. Potter,
    2009 WL 804722 (E.D.N.Y. Mar. 26, 2009).........................................................23

Cacchioli v. Hoberman,
    31 N.Y.2d 287 (1972) ...........................................................................................28

Caen v. Medina,
    537 F. Supp. 2d 471 (E.D.N.Y. 2008) ............................................................15, 17

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)................................................................................................5

Chan v. N.Y.C. Trans. Auth.,
    2004 WL 1812818 (E.D.N.Y. July 19, 2004).........................................................12

Chimarev v. TD Waterhouse Inv. Servs., Inc.,
    280 F. Supp. 2d 208 (S.D.N.Y. 2003)....................................................................30

Citroner v. Progressive Cas. Ins. Co.,
208 F. Supp. 2d 328 (E.D.N.Y. 2002) ..............................................................15, 16

Cliffstar Corp. v. Alpine Foods, LLC,
2010 WL 1949588 (W.D.N.Y. May 13, 2010)...........................................................27

Dayes v. Pace Univ.,
2000 U.S. Dist. LEXIS 3698 (S.D.N.Y. Mar. 22, 2000) ...........................................7

DiCola v. SwissRe Holding,
996 F.2d 30 (2d Cir. 1993).........................................................................................19

Divers v. Metro. Jewish Health Sys.,
2009 WL 103703 (E.D.N.Y. Jan. 14, 2009) .............................................................17

Dorcely v. Wyandanch Union Free Sch. Dist.,
665 F. Supp. 2d 178 (E.D.N.Y. 2009) ......................................................................24

Elgamil v. Syracuse Univ.,
2000 U.S. Dist. LEXIS 12598 (N.D.N.Y. Aug. 21, 2000) .........................................7

Faragher v. City of Boca Raton,
524 U.S. 775 (1998)...............................................................................................7, 14

Feingold v. New York,
366 F.3d 138 (2d Cir. 2004)...................................................................................7, 10

Fierro v. Saks Fifth Ave.,
13 F. Supp. 2d 481 (S.D.N.Y. 1998).........................................................................12

Fleming v. MaxMara U.S., Inc.,
644 F. Supp. 2d 247 (E.D.N.Y. 2009) .........................................................14, 19, 24

Galimore v. CUNY,
641 F. Supp. 2d 269 (S.D.N.Y. 2009).......................................................................24

Garone v. UPS,
436 F. Supp. 2d 448 (E.D.N.Y. 2006) ................................................................15, 19

Gordon v. Kings County Hosp. Ctr.,
2000 WL 1868091 (E.D.N.Y. Oct. 25, 2000)............................................................21

Grossman v. Gap, Inc.,
1998 U.S. Dist. LEXIS 3626 (S.D.N.Y. Mar. 24, 1998) ............................................9

Halbrook v. Reichhold Chems., Inc.,
766 F. Supp. 1290 (S.D.N.Y. 1991)..........................................................................20

Harris v. Forklift Systems, Inc.,
    510 U.S. 17 (1993)..............................................................................................6

Heba v. N.Y. State Div. of Parole,
    537 F. Supp. 2d 457 (E.D.N.Y. 2007) ...............................................................14

Hennigan v. Driscoll,
    2009 WL 3199220 (N.D.N.Y. Sept. 30, 2009) ..................................................28

Hudson v. Fischer,
    2008 WL 5110974 (N.D.N.Y. Dec. 2, 2008)......................................................14

Kamerman v. Steinberg,
    891 F.2d 424 (2d Cir. 1989)...............................................................................27

Kosehoff v. Henderson,
    1999 WL 907546 (E.D. Pa. 1999) .....................................................................23

Koss v. Sullivan County,
    2002 U.S. Dist. LEXIS 13294 (S.D.N.Y. July 22, 2002) ....................................8

Krasner v. HSH Nordbank AG,
    680 F. Supp. 2d 502 (S.D.N.Y. 2010).................................................................13

Laugh Factory, Inc. v. Basciano,
    608 F. Supp. 2d 549 (S.D.N.Y. 2009).................................................................29

Laurin v. Pokoik,
    2005 WL 911429 (S.D.N.Y. Apr. 18, 2005).......................................................22

Legnani v. Alitalia Linee Aeree Italiane,
    1997 WL 642556 (S.D.N.Y. Oct. 16, 1997) ........................................................9

Leopold v. Baccarat, Inc.,
    239 F.3d 243 (2d Cir. 2001)...............................................................................15

Lucas v. S. Nassau Cmty. Hosp.,
    54 F. Supp. 2d 141 (E.D.N.Y. 1998) ........................................................ passim

Lyons v. Lyons,
    289 A.D.2d 902, 734 N.Y.S.2d 734 (3d Dep't 2001) ..........................................27

Marvelli v. Chaps Comm. Health Ctr.,
    193 F. Supp. 2d 636 (E.D.N.Y. 2002) ..........................................................19, 25

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)............................................................................................5

Maxim Group LLC v. Life Partners Holdings, Inc.,
    690 F. Supp. 2d 293 (S.D.N.Y. 2010).................................................................29, 30

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973).................................................................................................19

Meiri v. Dacon,
    759 F.2d 989 (2d Cir. 1985).......................................................................................8

Meyercord v. Curry,
    38 A.D.3d 315, 832 N.Y.S.2d 29 (1st Dep't 2007) ................................................29

Missick v. City of New York,
    2010 WL 1655446 (E.D.N.Y. Mar. 22, 2010)..........................................7, 14, 24

Morris v. Ales Group USA, Inc.,
    2007 WL 1893729 (S.D.N.Y. June 29, 2007) ........................................................30

Murray v. Visiting Nurse Servs.,
    528 F. Supp. 2d 257 (S.D.N.Y. 2007).....................................................................22

Nicastro v. Runyon,
    60 F. Supp. 2d 181 (S.D.N.Y. 1999).......................................................................23

Nieves v. District Council 37, AFSCME, AFL-CIO,
    2009 WL 4281454 (S.D.N.Y. Nov. 24, 2009).................................................8, 18

Nocera v. N.Y.C. Fire Comm'r,
    921 F. Supp. 192 (S.D.N.Y. 1996) .........................................................................28

Osorio v. Source Enter., Inc.,
    2006 WL 2548425 (S.D.N.Y. Sept. 5, 2006)..........................................................12

Patterson v. CBS, Inc.,
    2000 WL 666337 (S.D.N.Y. 2000).................................................................15, 25

Pulley v. KPMG Consulting, Inc.,
    348 F. Supp. 2d 388 (D. Md. 2004) ........................................................................25

Ragin v. E. Ramapo Cent. Sch. Dist.,
    2010 WL 1326779 (S.D.N.Y. Mar. 31, 2010) ........................................................22

Reddy v. Carpal Holdings, Ltd.,
    2010 WL 1379844 (S.D.N.Y. Mar. 31, 2010) .................................................27, 28

Romano v. Stora Enso Corp.,
    2010 WL 986535 (E.D.N.Y. Feb. 12, 2010)....................................................13, 14

Rumala v. N.Y.C. Transit Auth.,
    2005 WL 2076596 (E.D.N.Y. Aug. 26, 2005)........................................................................22

Samborski v. W. Valley Nuclear Servs.,
    2002 U.S. Dist. LEXIS 12745 (W.D.N.Y. June 25, 2002).......................................................9

Sandyford v. Fort Greene Senior Citizen's Council, Inc.,
    2009 WL 705761 (E.D.N.Y. Mar. 16, 2009)...................................................................7, 15

Santiago v. City of N.Y.,
    2009 WL 935720 (E.D.N.Y. Mar. 31, 2009)........................................................................23

Sassaman v. Gamache,
    566 F.3d 307 (2d Cir. 2009)...........................................................................................17, 26

Sgarlata v. Viacom Inc.,
    2005 WL 659198 (S.D.N.Y. Mar. 22, 2005) ......................................................................23

Shaner v. Synthes (USA),
    204 F.3d 494 (3d Cir. 2000)................................................................................................23

Sicular v. N.Y.C. Dep't of Homeless Servs,,
    2010 WL 423013 (S.D.N.Y. Feb. 4, 2010)..........................................................................17

Silva v. Peninsula Hotel,
    509 F. Supp. 2d 364 (S.D.N.Y. 2007)..................................................................................25

Simpson v. Metro-North Comm. R.R.,
    2006 WL 2056366 (S.D.N.Y. July 20, 2006) ......................................................................12

Simpson v. N.Y. State Dep't of Civ. Servs.,
    166 Fed. Appx. 499 (2d Cir. 2006)......................................................................................24

St. Mary's Honor Ctr. v. Hicks,
    509 U.S. 502 (1993).....................................................................................................19, 24

Stofsky v. Pawling Cent. Sch. Dist.,
    635 F. Supp. 2d 272 (S.D.N.Y. 2009)..................................................................................17

Sundaram v. Brookhaven Nat'l Labs.,
    424 F. Supp. 2d 545 (E.D.N.Y. 2006) ...........................................................................20, 22

Texas Dep't of Cmty. Affairs v. Burdine,
    450 U.S. 248 (1981).............................................................................................................19

Valentine v. Standard & Poor's,
    50 F. Supp. 2d 262 (S.D.N.Y. 1999)....................................................................................25

Van Zant v. KLM Royal Dutch Airlines,
    80 F.3d 708 (2d Cir. 1996)........................................................................................14

Vazquez v. Southside United Hous. Dev. Fund Corp.,
    2009 WL 2596490 (E.D.N.Y. Aug. 21, 2009).........................................................17

Ventur Group, LLC v. Finnerty,
    68 A.D.3d 638, 892 N.Y.S.2d 69 (1st Dep't 2009) ................................................29

Vinokur v. Sovereign Bank,
    2010 WL 1223320 (E.D.N.Y. Mar. 22, 2010).........................................................24

Vito v. Bausch & Lomb, Inc.,
    2010 WL 681230 (W.D.N.Y. Feb. 23, 2010) ......................................................8, 18

Wells-Williams v. Kingsboro Psychiatric Ctr.,
    2007 WL 1011545 (E.D.N.Y. Mar. 30, 2007).........................................................14

**STATUTORY AUTHORITIES**

FED. R. CIV. P. 56(c)..........................................................................................................4

Defendants The TJX Companies, Inc. ("TJX"), Rick Kaiser and Armando Cabrera (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment dismissing the Amended Complaint of Plaintiffs Eileen Connolly, Paulette Honick, Darlene Lelle and Lorraine Serraino (collectively, "Plaintiffs") in its entirety.

## PRELIMINARY STATEMENT

Plaintiffs are four former store employees of TJX who worked in TJX's TJ Maxx retail store in Kings Park, New York.  As the undisputed facts make clear, in June 2005, TJX terminated their employment after an investigation conducted by TJX's Loss Prevention Department revealed that Plaintiffs had repeatedly violated TJX's layaway policy and thereby caused a financial loss to the TJX.  Specifically, TJX's layaway policy permitted employees to place merchandise on layaway for a period of up to 30 days, after which the employee either had to purchase the merchandise or allow it to be returned to the sales floor.  TJX's policy also made clear that employees were not permitted to "roll-over" layaways – that is, cancel the layaway and then place the merchandise back on layaway, in the hopes of the price being reduced and discounted as time passed - which is precisely what Plaintiffs did.

There is no dispute that each of the Plaintiffs – as well as two other employees whose employment was similarly terminated – engaged in this practice of layaway rollovers.  There is also no dispute that TJX's Loss Prevention Department, which is charged with investigating fraud and suspicious trends, discovered this practice as part of its normal procedures, had no knowledge of any protected activity involving the Plaintiffs, and did not even involve or notify the Store Manager (Mr. Kaiser), the District Manager (Mr. Cabrera), or Human Resources until just before they came to the store to question the suspected employees.  After questioning each of the Plaintiffs in separate interviews, Loss Prevention determined that each of the Plaintiffs (as well as two others) had violated TJX policy causing financial loss to TJX, and their employment was therefore terminated

as part of standard procedure.  Each of the Plaintiffs signed written statements concerning their involvement, and while certain of the Plaintiffs claim that they were not aware of the policy or question how TJX lost money, each admits that they indeed engaged in the conduct for which their employment was terminated.

Nevertheless, Plaintiffs now allege Title VII claims for hostile work environment and retaliatory termination arising from an unrelated complaint that was fully resolved six months earlier.  Specifically, in January 2005, Lelle complained to Mr. Cabrera about her perception of Mr. Kaiser's ineffective and poor management of the store, and mentioned in passing that Mr. Kaiser also made inappropriate jokes and comments.  It is undisputed that in response to this complaint – which was the first time that any of the Plaintiffs lodged a complaint or even objected to Mr. Kaiser's conduct – Mr. Cabrera contacted Human Resources that very day, that Human Resources contacted Lelle the following day, and that two Human Resources representatives arrived at the store to conduct an investigation the day thereafter.  Upon the conclusion of this investigation, which included interviews of each of the four Plaintiffs and Mr. Kaiser, Mr. Cabrera and TJX issued a written Final Warning to Mr. Kaiser and required him to conduct a meeting with all of the staff during which he apologized for his behavior.  It is further undisputed that as a result of that investigation, Mr. Kaiser never again made any other inappropriate comments and the issue was fully resolved.  TJX's swift and effective response, combined with its anti-harassment policies which each Plaintiff admitted receiving and understanding, is the absolute model response anticipated by the law.  Under these circumstances, Plaintiffs' hostile work environment claims are not cognizable.

Furthermore, all apart from TJX's prompt response to Plaintiffs' complaints, Plaintiffs' hostile work environment claims also fail because they do not remotely rise to the "severe or pervasive" level required to establish such claims.  Plaintiffs' testimony makes clear that

2

intermittently over the course of several years, Mr. Kaiser's inappropriate behavior was limited to: (i) an incident in which he joked about the breast size of a customer who had asked where she could find bras for large women; (ii) on "a couple" of occasions commenting on the packaging of men's underwear and suggesting that the models "stuffed;" (iii) on one occasion placing a fake flower over his groin (over his clothing); (iv) on one occasion wearing a pair of "thong" underwear over his clothes; and (v) on some occasions placing small statues in "weird" positions.  While admittedly juvenile and childish, this conduct does not rise to the level of being so "severe or pervasive" as to render Plaintiffs' working environment one "permeated with discriminatory intimidation, ridicule and insult" sufficient to alter the conditions of their employment.   Indeed, notwithstanding Plaintiffs' conclusory allegations of a hostile work environment, Plaintiffs variously admitted that they had no subjective perception of their work environment as hostile and, in fact, described the store as "nice," having a "family-like" atmosphere where "everybody was close," and admitting that they liked Mr. Kaiser, that he was a "nice young gentleman" and that they knew he was "just joking around."  As such, Plaintiffs' manufactured allegations fail on this front as well.

Plaintiffs' retaliation claims are equally untenable.  It is undisputed that Plaintiffs' terminations did not occur until a full six months after Lelle's complaint was fully resolved, and that it was the result of a wholly separate and "blind" investigation into suspected layaway violations initiated by TJX's Loss Prevention Department without knowledge of the names or identities of store employees being investigated.  It is also undisputed that the Loss Prevention Department did not have any knowledge of Plaintiffs' protected activity, and that neither Mr. Cabrera, Mr. Kaiser or Human Resources were, in turn, aware of the Loss Prevention's investigation.  There is simply nothing beyond Plaintiffs' rank speculation to support these claims requiring their dismissal.

Finally, Plaintiffs assert claims for "Duress and Coercion" and Fraudulent Inducement based on their signed admissions of violations of the layaway policy and the promissory notes agreeing to

reimburse TJX for the losses they caused, claiming that they executed these documents only because they were "coerced" or "induced" into doing so based upon an alleged promise that their employment would not be terminated.[1]   However, Plaintiffs' depositions make clear that no promises of the kind were made.   Moreover, even if they were, it is well-settled that an at-will employee, as each Plaintiff was, cannot advance a claim for duress, coercion or fraudulent inducement premised on the threat of termination because an employer such as TJX has a legal right to terminate their employment at any time.   Nor is there even a civil cause of action for "duress and coercion," as it is only an affirmative defense to a claim for breach of contract.   Accordingly, Plaintiffs' "duress and coercion" and fraudulent inducement claims must be dismissed.

At bottom, this case establishes TJX's absolute commitment to preventing harassment or retaliation of any kind, and Plaintiffs' allegations are nothing more than a desperate attempt to avoid the undisputed fact that Plaintiffs were terminated due to their abuse of TJX's layaway policy. Indeed, while Plaintiffs have already voluntarily withdrawn 47 of their original 63 claims after TJX identified the utter lack of merit to those claims, they have not gone far enough.   TJX respectfully requests that the Court dismiss the remaining 16 claims as equally meritless and baseless.

## STATEMENT OF FACTS

TJX respectfully refers the Court to the enclosed Local Rule 56.1 Statement of Material Undisputed Facts and Local Rule 56.1 Supplemental Statement of Material Undisputed Facts for a recitation of the undisputed facts relevant to the instant Motion.

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if the pleadings, depositions, affidavits, and other discovery establish that there is no genuine issue as to any material fact and that the moving party is

---

[1]       Plaintiffs have since withdrawn these claims against Mr. Kaiser.  See Docket Entry No. 63.

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The party seeking summary judgment bears the initial responsibility of identifying the bases for its motion and those portions of the record that demonstrate the absence of a genuine factual issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the non-moving party must proffer admissible evidence demonstrating that a trial is required because disputed issues of material fact exist.  Liberty Lobby, 477 U.S. at 249.  For Plaintiffs to survive summary judgment, they "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, they must put forward sufficient admissible evidence from which a reasonable fact-finder could return a verdict in their favor.  Id.  Importantly, Plaintiffs cannot escape summary judgment by presenting conclusory or speculative evidence.  Liberty Lobby, 477 U.S. at 248.

In this case, Plaintiffs' own deposition testimony and the record evidence establish that TJX, Mr. Cabrera, and Mr. Kaiser are entitled to summary judgment on Plaintiffs' claims.  As such, TJX respectfully requests that summary judgment be granted as to each of Plaintiffs' claims.

## II.    PLAINTIFFS CANNOT ESTABLISH THE ELEMENTS OF A HOSTILE WORK ENVIRONMENT CLAIM (COUNTS 1, 6, 9, 13)[2]

Plaintiffs' hostile work environment claims, which are based on the alleged conduct of Mr. Kaiser, must be dismissed for several reasons.  First, the alleged harassment does not even remotely rise to the level of a hostile work environment.  This case involves no allegations of touching or groping, no open displays of pornography, no sexual propositioning of the Plaintiffs of any kind, nor any other outrageous sexual conduct typically present in actionable hostile work environment

---

[2]    The Amended Complaint does not identify the counts set forth therein by number or otherwise.  Accordingly, for the Court's convenience, we identify the counts asserted in the Amended Complaint by number in the order in which they appear in the Amended Complaint.

cases.  The only allegations here are of a handful of isolated juvenile or crude actions, which do not remotely rise to the "severe and pervasive" level required to support an actionable claim.  Second, the conduct was admittedly not directed at Plaintiffs because of their gender and therefore does not support a sexual harassment claim under well-established case law.  Third, even if Plaintiffs are able to establish a hostile work environment – they cannot – the evidence makes clear that TJX cannot be held vicariously liable because it made extensive efforts to prevent harassment and discrimination and took immediate and effective steps to correct Mr. Kaiser's actions immediately upon learning of them.  Finally, to the extent Plaintiffs assert these claims against the individual defendants, it is well settled that Title VII does not permit claims against individuals.

A.  **Mr. Kaiser's Alleged Comments Are Not Sufficiently "Severe or Pervasive" to Create a Hostile Work Environment**

Plaintiffs' hostile work environment claims stem, in their entirety, from five comments or incidents allegedly made by Mr. Kaiser over the course of three years, several of which were not even witnessed by all of the Plaintiffs.[3]  These statements and incidents, assuming they are true for purposes of this motion, fall far short of the severe and pervasive standard required to establish a hostile work environment.

To establish a hostile work environment claim, Plaintiffs must show that their workplace was so "permeated with 'discriminatory intimidation, ridicule, and insult" and was so "severe or pervasive" that it altered the conditions of their employment.  Lucas v. S. Nassau Cmty. Hosp., 54 F. Supp. 2d 141, 146 (E.D.N.Y. 1998) (Seybert, J.) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Isolated incidents or remarks are insufficient to establish an actionable hostile

---

[3]  Specifically, Plaintiffs' claims are premised on: (i) Mr. Kaiser allegedly commenting on the breast-size of customers that entered the store; (ii) Mr. Kaiser wearing "thong" underwear over his clothes on one occasion; (iii) Mr. Kaiser, in reference to the photographs on the packaging for men's underwear, stating that it looked like "they stuffed"; (iv) Mr. Kaiser placing a fake flower over his groin and over his clothes and stating that he was going to go to the beach with it on; and (v) Mr. Kaiser taking small statues and placing them in "weird" positions and making inappropriate comments about them.  Aside from these specific incidents, Plaintiffs could not specifically identify any other alleged inappropriate comments or conduct.  (Supp. 56.1 Stmt. ¶ 1-9).

6

work environment claim; rather, the incidents of harassment must occur with such regularity as to be termed pervasive.  Faragher v. City of Boca Raton, 524 U.S. 775, 787 & n.1 (1998) ("Incidents of environmental sexual harassment 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive'"); Brennan v. Metropolitan Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999) ("Isolated, minor acts or occasional episodes do not warrant relief.").  Moreover, not only must Plaintiffs themselves have subjectively felt that the work environment and/or comments were offensive; but in order to be actionable, the conduct must also be objectively offensive, such that a reasonable person would find the environment unbearably hostile or abusive.  Faragher, 524 U.S. at 787; see also Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) (holding that this standard entails "showing both 'objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive")  In determining whether the objective standard is met, courts consider: (i) the frequency of the conduct; (ii) its severity; (iii) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (iv) whether the conduct unreasonably interfered with the plaintiff's work; and (v) what psychological harm, if any, resulted.  See, e.g., Sandyford v. Fort Greene Senior Citizen's Council, Inc., 2009 WL 705761, at *8 (E.D.N.Y. Mar. 16, 2009).  Importantly, to be actionable, the complained of conduct must be prompted by a plaintiff's membership in a protected class.  See id. (citing Brennan, 192 F.3d at 318); Missick v. City of N.Y., 2010 WL 1655446, at *12 (E.D.N.Y. Mar. 22, 2010).  The five incidents that Plaintiffs point to over the course of their employment are wholly insufficient to meet these standards.[4]

_____

[4]        Plaintiffs also suggest that Mr. Kaiser "generally" made inappropriate jokes and comments, but none of the Plaintiffs could identify any other incident or comment with any specificity.  It is well settled that Plaintiffs cannot rely upon generic assertions of comments without any particularization to support a claim of hostile work environment.  Elgamil v. Syracuse Univ., 2000 U.S. Dist. LEXIS 12598, at *23-24 (N.D.N.Y. Aug. 21, 2000) ("[A]llegations of

As an initial matter, the case law makes clear that the complained-of conduct, while admittedly unprofessional, is wholly insufficient to be considered <u>objectively</u> hostile to meet the severe and pervasive standard.   For instance, in <u>Vito v. Bausch & Lomb, Inc.</u>, the plaintiff complained that her supervisor pressed his body against hers on one occasion, that he frequently informed her about his sexual activities, that he presented her with a paper with the number "69" written on it and asked if she knew the "sexual meaning" of the number, and that he simulated a sexual act on a piece of tubing in front of her.   2010 WL 681230, at *1-2 (W.D.N.Y. Feb. 23, 2010). The Court held that this conduct, while "juvenile" and "crude," could not rise to the level of being perceived as objectively hostile.   <u>See</u> <u>id.</u>, at *9-10.

Likewise, in <u>Nieves v. District Council 37, AFSCME</u>, the plaintiff complained that her supervisor blew kisses at her, that he sent her emails containing pornographic content, that he placed rubber over his finger and referred to it as a "finger condom," that he jokingly asked her to take a picture of him exposing himself, and that he directed her to retrieve an item in a drawer that he knew was filled with condoms.   2009 WL 4281454, at *1-3 (S.D.N.Y. Nov. 24, 2009).   The Court dismissed the plaintiff's hostile work environment claim in light of the "remarkably high standard imposed by the Second Circuit," characterizing the conduct as merely "inappropriate and in poor taste."   <u>Id.</u> at *6 (quotations omitted).   The Court also found it significant that the plaintiff was not physically threatened nor humiliated.   <u>See</u> <u>id.</u>   In sum, the Court held that the conduct was

---

repeated, but unarticulated conduct have been shown to be insufficient to defeat summary judgment.") (citing, among others, <u>Dayes v. Pace Univ.</u>, 2000 U.S. Dist. LEXIS 3698, at *12 (S.D.N.Y. Mar. 22, 2000) (finding "plaintiff['s] attempts to create an appearance of pervasiveness by asserting 'the conduct to which I was subjected . . . occurred regularly and over many months'" were wholly insufficient), <u>aff'd</u>, 2 Fed. Appx. 204 (2d Cir. 2001); <u>Koss v. Sullivan County</u>, 2002 U.S. Dist. LEXIS 13294, at *8 (S.D.N.Y. July 22, 2002) ("To claim in conclusory fashion that a supervisor engaged in offensive speech without remotely particularizing what he said cannot support a claim of hostile work environment claim."); <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985) (allegations that plaintiff constantly "'heard disparaging remarks about Jews, but of course, don't ask me to pinpoint people, times or places . . . It's all around us'" are conclusory and insufficient to satisfy the demands of Rule 56).

insufficiently severe or pervasive to have "altered the conditions of [the plaintiff's] employment" as would be necessary to survive summary judgment. Id. (quotations omitted).

Perhaps most instructively, in Alfano v. Costello, the Second Circuit reversed the denial of a post-trial motion seeking to dismiss a hostile work environment claim.  294 F.3d 365 (2d Cir. 2002).  There, the record revealed that the plaintiff's supervisor informed her that she should not eat carrots, bananas or hot dogs because she did so in a "seductive" manner; that someone placed a carrot and two potatoes in her office mailbox in the shape of male genitalia; that someone posted a notice in a visiting room stating that "[c]arrots will not be allowed in the visiting area due to [plaintiff's] strong liking for them"; and that a cartoon was placed in her mailbox depicting a subordinate making sexual remarks.  See id. at 370.  The Court held that these incidents, taken together, were "too mild, under the standard so far delineated by the case law, to create an abusive working environment."  Id. at 380; see also Bailey v. Synthes, 295 F. Supp. 2d 344, 358 (S.D.N.Y. 2003) (dismissing hostile work environment claim premised on supervisor showing plaintiff a picture of male genitalia, dancing in a "sexually suggestive" manner with another employee, recounting a sexual experience with a nurse, and providing plaintiff with a smaller cigar than that provided to her male colleagues).[5]

These cases individually and collectively make clear that Mr. Kaiser's antics, which Plaintiffs acknowledge were limited to commenting on a customer's breast-size, wearing "thong" underwear over his clothes once, claiming that male models on underwear packaging "stuffed,"

---

[5]       Indeed, the cases are legion that the few comments at issue here cannot support a hostile work environment claim.  See, e.g., Samborski v. W. Valley Nuclear Servs., 2002 U.S. Dist. LEXIS 12745, at *24 n.20, *28 (W.D.N.Y. June 25, 2002) (more than twenty comments of "a woman's place was at home, bare foot and pregnant," "women should be washing the clothes," and routinely calling plaintiff a "laundry bitch," in addition to other conduct, are insufficient to create a hostile work environment and amount only to unactionable "'sporadic use of abusive language, gender-related jokes, and occasional teasing'"); Grossman v. Gap, Inc., 1998 U.S. Dist. LEXIS 3626, at *18-19 (S.D.N.Y. Mar. 24, 1998) (unwanted sexual advances, calls at home, and rude and suggestive comments without any allegations of inappropriate touching were insufficient to withstand employer's motion for summary judgment); Legnani v. Alitalia Linee Aeree Italiane, 1997 WL 642556, at *3 (S.D.N.Y. Oct. 16, 1997) (grabbing crotch and thrusting pelvis at plaintiff on four occasions in a three-month period not severe and pervasive).

placing a flower over his clothed groin once, and placing statues in "weird" positions, were simply childish and unprofessional. (Supp. 56.1 Stmt. ¶¶ 1-9). None of the conduct identified by Plaintiffs involved threats, physical contact, or even derogatory or sexual comments about any of the Plaintiffs as would be sufficient to survive summary judgment. See Alfano, 294 F.3d at 279-280 (discussing cases and facts sufficient to give rise to hostile work environment claim). In addition, as Lelle and Serraino put it, Mr. Kaiser thought he was "just joking," eliminating any suggestion that his conduct was prompted by any hostility or antagonistic motive. (Supp. 56.1 Stmt. ¶ 22; 56.1 Stmt. ¶ 39, 50, 56, 61). Stated differently, no reasonable person could have construed Mr. Kaiser's isolated actions as creating a workplace permeated with discrimination, insults, threats and ridicule such that it altered the terms and conditions of Plaintiffs' employment as would be necessary to survive summary judgment. See Feingold, 366 F.3d at 150; Lucas, 54 F. Supp. 2d at 146.

Furthermore, Plaintiffs' own testimony precludes them from establishing that they perceived any of these incidents as subjectively hostile. See, e.g., Feingold, 366 F.3d at 150 (noting that a plaintiff must subjectively perceive the work environment as abusive). Serraino admits, for example, that she "giggled" when she saw Mr. Kaiser wear the "thong" underwear over his clothes, she further conceded that she laughed at some of his jokes, and she admitted that she thought Mr. Kaiser "was a very nice young gentleman" and that she "never had a problem with him." (Supp. 56.1 Stmt. ¶ 19). When she perceived an incident to be inappropriate, she admits that she was able to just "walk away." (Id.). Honick similarly admitted that she was able to just "ignore" Mr. Kaiser's comments or just "walk away," and that none of his comments or conduct prevented her from performing her job. (Id. at ¶ 21). Honick also acknowledged that, despite her contention now that she subjectively perceived her work environment as hostile, she joked around with Mr. Kaiser and often laughed at his jokes and in fact "liked Rick." (56.1 Stmt. ¶ 54; Supp. 56.1 Stmt. ¶ 20). Lelle acknowledged that Mr. Kaiser was "just joking around" and that he did not intend to make her

uncomfortable (Supp. 56.1 Stmt. ¶ 22; 56.1 Stmt. ¶ 61).  She admitted further that when Mr. Kaiser behaved inappropriately, she too would just "roll her eyes" and "walk away."  (Supp. 56.1 Stmt. ¶ 22).  Finally, Connolly conceded that she could not recall <u>any</u> offensive comments that Mr. Kaiser made, and that the only incident she was present for was one incident in which Mr. Kaiser commented about the packaging of the men's underwear.  (Supp. 56.1 Stmt. ¶ 8).  Plaintiffs' collective reactions, at best, demonstrate annoyance with Mr. Kaiser rather than any subjective perception that their workplace was hostile.

Further evidencing that the complained of conduct was neither severe or pervasive from a subjective standpoint are Plaintiffs' admissions concerning the atmosphere of the store during Mr. Kaiser's tenure.  Honick admitted that the store had a "family atmosphere," that everyone was "very close to each other," and that the employees joked around with each other.  (56.1 Stmt. ¶ 55; Supp. 56.1 Stmt. ¶ 15).  Lelle echoed these comments, also noting that a "family-like atmosphere" persisted at the store.  (56.1 Stmt. ¶ 61; Supp. 56.1 Stmt. ¶ 17).  And finally, Connolly admitted that she liked Mr. Kaiser and that she was happy working at TJX up until the moment of her termination.  (Supp. 56.1 Stmt. ¶ 18).  These admissions are a far cry from the subjective perception of workplace "permeated with 'discriminatory intimidation, ridicule, and insult" that is necessary to establish a viable claim for hostile work environment discrimination.  <u>See</u>, <u>e.g.</u>, <u>Lucas</u>, 54 F. Supp. 2d at 146.

It is equally significant that none of the Plaintiffs ever objected to Mr. Kaiser's conduct, informed him that they believed it was inappropriate, asked him to stop, or otherwise complained to anyone at TJX until Lelle spoke with Mr. Cabrera in January 2005.  (Supp. 56.1 Stmt. ¶ 11; 56.1 Stmt. ¶ 50, 57, 68).  Even then, her mention of Mr. Kaiser's comments was secondary to her

complaints about her perception of his poor management skills.[6]  (56.1 Stmt. ¶¶ 33-40).  New York courts regularly consider a failure to object to conduct or a failure to lodge a complaint about allegedly objectionable conduct to reveal that a plaintiff did not subjectively perceive the work environment as hostile as is required to survive summary judgment.  See, e.g., Osorio v. Source Enter., Inc., 2006 WL 2548425, at *5 n.4 (S.D.N.Y. Sept. 5, 2006) ("[T]he fact that plaintiff never complained, or even asked Childs to stop, suggests that she did not 'subjectively perceive that environment to be abusive.'"); Chan v. N.Y.C. Trans. Auth., 2004 WL 1812818, at *7 (E.D.N.Y. July 19, 2004) (same); Fierro v. Saks Fifth Ave., 13 F. Supp. 2d 481, 494 (S.D.N.Y. 1998) (same).

As such, Plaintiffs cannot establish that the few juvenile incidents were sufficiently "severe and pervasive" to make out an objectively hostile work environment, nor that they subjectively perceived their working environment as hostile, and therefore Plaintiffs' claims must be dismissed.

### B.      Plaintiffs' Hostile Work Environment Claims Fail As Well Because the Complained-Of Conduct Was Not Prompted by Plaintiffs' Sex.

Plaintiffs' claims of hostile work environment fail for the separate reason that irrespective of the number of comments or incidents, the evidence establishes that Mr. Kaiser did not engage in any conduct "because of" Plaintiffs' gender, and indeed, it is undisputed that his comments and actions were directed at males and females.  (Supp. 56.1 Stmt. ¶ 10).  As one court recently

---

[6]      In response to TJX's Rule 56.1 Statement of Undisputed Facts, Plaintiffs contend that Serraino and Honick lodged complaints to assistant managers Steve DiGioia and Lori Wachtel.  (Pl. Resp. 56.1 ¶¶ 57, 68).  With respect to Honick's alleged complaints, Plaintiffs fail to offer a citation to the record and a review of Honick's deposition transcript reveals no testimony whereby she contends she lodged a complaint with anyone.  With respect to Serraino, she testified that she did not complain "to any manager," but that she did "talk" about it with DiGioia and Wachtel. (Serraino Dep. 155:2-156:13).  When asked pointedly, "[d]id you complain about Rick's behavior to them?," Serraino responded "I had told them what I felt and what he had done and a few things he was saying," expressly declining to characterize her conversation as a complaint.  (Id. at 155:10-14).  And again, later in her deposition, when she was asked why she did not complain about Mr. Kaiser, Serraino responded, in its entirety, "Because I thought Rick was a very nice young gentleman.  I never had a problem with him, and I didn't want to see him get hurt or anything to happen to him, you know.  I would just walk away when he would say things."  (Id. at 300:5-10).  Such informal conversations, especially because Serraino did not even characterize them as complaints, do not constitute complaints. See, e.g., Simpson v. Metro-North Comm. R.R., 2006 WL 2056366, at *10-11 (S.D.N.Y. July 20, 2006).  Moreover, further evidencing that Serraino did not complain is the fact that DiGioa was not an assistant manager in the Kings Park store in 2003 and never reported to Mr. Cabrera, nor was he employed by TJX in 2005.  (Cabrera Dep. 111:2-21).

confirmed: "Title VII does not prohibit employers from maintaining nasty, unpleasant workplaces, or even ones that are unpleasant for reasons that are sexual in nature.  Rather, it prohibits employers from discriminating against an employee (including by subjecting him or her to hostile working conditions) 'because of such individual's . . . sex..'  The prohibited causal factor requirement thus flows directly from the text of Title VII, and from the very essence of its nature as an *anti-discrimination* law."  Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010) (citation omitted) (granting motion to dismiss where allegations made clear that offending conduct was not engaged in because the plaintiff was male); see also Romano v. Stora Enso Corp., 2010 WL 986535, at *19 (E.D.N.Y. Feb. 12, 2010) (dismissing hostile work environment claim where there was no evidence that conduct was "motivated by hostility towards females").

Here, the evidence establishes that Mr. Kaiser did not engage in any conduct because of Plaintiffs' sex.  Indeed, each Plaintiff concedes that the complained of conduct was not directed at them alone, nor at females alone, but rather that it was directed at all employees irrespective of their gender and that male employees were often present during Mr. Kaiser's antics.  (Supp. 56.1 Stmt. ¶ 10).  Serraino, Connolly and Honick each admitted that Mr. Kaiser made the complained-of comments in front of any associate that was present, male and female alike.  (Id.).  Similarly, Serraino admitted that Mr. Kaiser called all employees to his office over the intercom when he was wearing a thong.  (Id. at ¶ 3).  Lelle conceded that Mr. Kaiser repeated his comment about a customer's breast size to her husband over the phone that same day.  (Id. at ¶ 2).  In fact, Honick expressly conceded that she did not believe Mr. Kaiser engaged in any conduct or made any inappropriate comments because of her gender.  (Id. ¶ 10).  Because there is no evidence that Mr. Kaiser engaged in any conduct because of Plaintiffs' gender, Plaintiffs cannot survive summary judgment.  See Brennan, 192 F.3d at 318 ("[A]n environment which is equally harsh for both men and women" does not constitute an actionable hostile work environment because it does not contain

13

the necessary causal connection between a protected class and the conduct in issue."); <u>Alfano</u>, 294 F.3d at 374 ("[I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex."); <u>Romano</u>, 2010 WL 986535, at *19 (dismissing hostile work environment claim where there was no evidence that conduct was "motivated by hostility towards females"); <u>Missick</u>, 2010 WL 1655446, at *12 ("[Plaintiff] also must demonstrate that she suffered such abuse *because* of her membership in a protected class."); <u>Hudson v. Fischer</u>, 2008 WL 5110974, at *6 (N.D.N.Y. Dec. 2, 2008) (dismissing hostile work environment claim because the conduct was performed in front of males as well); <u>Heba v. N.Y. State Div. of Parole</u>, 537 F. Supp. 2d 457, 467 (E.D.N.Y. 2007); <u>Wells-Williams v. Kingsboro Psych. Ctr.</u>, 2007 WL 1011545, at *4, 6 (E.D.N.Y. Mar. 30, 2007) (dismissing hostile work environment claim and stating, "[a]t best, the evidence here demonstrates that the work environment was equally unprofessional for both men and women").

Accordingly, for this reason too, Plaintiffs' hostile work environment claims must be dismissed as a matter of law.

### C.   TJX's Well-Established Policies to Prevent Harassment And Its Prompt and Effective Response to Plaintiffs' Complaints Compels Dismissal of Plaintiffs' Claims

Even if Plaintiffs could establish an actionable hostile work environment – they cannot – TJX still cannot be held liable unless Plaintiffs establish a specific basis for imputing liability to TJX.  <u>See</u>, <u>e.g.</u>, <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 715 (2d Cir. 1996); <u>Lucas</u>, 54 F. Supp. 2d at 149.  It is well-settled that an employer will not be liable for sexual harassment where: (i) it exercised reasonable care to prevent and promptly correct any harassing behavior; and (ii) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise.  <u>See</u> <u>Faragher</u>, 524 U.S. at 807; <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 765 (1998); <u>Fleming v. MaxMara U.S., Inc.</u>, 644 F.

Supp. 2d 247, 263 (E.D.N.Y. 2009), aff'd, 2010 U.S. App. LEXIS 6134 (2d Cir. 2010); Sandyford,

2009 WL 705761, at *8; Garone v. UPS, 436 F. Supp. 2d 448, 464 (E.D.N.Y. 2006).[7]

As to the first prong, TJX plainly exercised reasonable care and instituted preventative measures. It is undisputed that TJX published a Code of Conduct that was disseminated to all employees and that contained detailed policies prohibiting harassment and outlining complaint procedures, which each Plaintiff acknowledged receiving and understanding. (56.1 Stmt. ¶¶ 19-23). Courts in this District routinely find the existence of such policies sufficient to satisfy the first prong of the Faragher/Ellerth defense. See, e.g., Caen v. Medina, 537 F. Supp. 2d 471, 477 (E.D.N.Y. 2008); Garone, 436 F. Supp. 2d at 471-72; Citroner, 208 F. Supp. 2d at 341; see also Leopold v. Baccarat, Inc., 239 F.3d 243, 245 (2d Cir. 2001) ("the existence of an anti-harassment policy with complaint procedures" is a critical consideration).

Moreover, the policies embedded in TJX's Code of Conduct were not just words, but rather as is undisputed here, were precepts by which TJX abided and which were followed to bring an end to the objectionable conduct. It is undisputed that Lelle contacted Mr. Cabrera by phone and he set up a meeting with her within days. (56.1 Stmt. ¶¶ 33-34). Although Lelle primarily complained about Mr. Kaiser's management style and her perception that the store was not being run appropriately, in a letter she brought to the meeting, Mr. Cabrera "immediately went to the last part of the letter and said that this concerns him the most" in reference to her written statement that Mr. Kaiser "made inappropriate comments repeatedly" and that she believed he had "a warped sense of humor and focuse[d] on foul things." (Supp. 56.1 Stmt. ¶ 15). According to Lelle, "he was very

---

[7]     We note that the Faragher/Ellerth defense is available only where no tangible employment action is taken. See Fleming, 644 F. Supp. 2d at 263. Although Plaintiffs were ultimately terminated here, it is well-settled that "[t]he Faragher/Ellerth defense is available to the employer despite the fact that the employee had been discharged, where the alleged hostile work environment did not culminate in employee's discharge, but the employee was instead fired for another reason." Citroner v. Progressive Cas. Ins. Co., 208 F. Supp. 2d 328, 341 (E.D.N.Y. 2002); Patterson v. CBS, Inc., 2000 WL 666337, at *8 (S.D.N.Y. 2000). Here, not even Plaintiffs allege that their termination was part of the alleged hostile work environment, but instead that it was in retaliation for their participation in protected activity.

concerned with that, and he said, you know, this is something that I need to report to human resources." (Id.).

It is further undisputed that Mr. Cabrera did, in fact, immediately report Lelle's concerns to David Del Vecchio, a Human Resources representative, that day. (56.1 Stmt. ¶ 45). Human Resources, in turn, contacted Lelle the following day  and arrived at the store the day after that to conduct an investigation which included interviews of each of the Plaintiffs separately as well as Mr. Kaiser. (Id. at ¶¶ 45-46). During Human Resources' interview of Mr. Kaiser, it is undisputed that he was instructed to immediately cease making inappropriate comments and counseled that all of his conversations had to be business-related. (Id. at ¶¶ 74-75). Notably, each Plaintiff informed Human Resources during their respective interviews that they did not want any disciplinary action taken against Mr. Kaiser. (Id. at ¶¶ 51, 58, 62; Supp. 56.1 Stmt. ¶ 12).

Finally, following the investigation, TJX took prompt disciplinary action. Specifically, Mr. Cabrera issued Mr. Kaiser a Final Written Warning, advising him that any further infractions would result in his termination. (56.1 Stmt. ¶¶ 78-79). Mr. Cabrera also directed Mr. Kaiser to hold a store-wide meeting to apologize to all of the employees for any inappropriate behavior and to assure them that the conduct would not occur again in the future. (Id. at ¶ 76, 80). Significantly, each Plaintiff concedes here that TJX's prompt intervention and remedial measures were effective in that TJX's intervention brought an end to the offending conduct. (Id. at ¶ 81; Supp. 56.1 Stmt. ¶ 13). As such, Plaintiffs cannot dispute that TJX satisfies the first prong of the Faragher/Ellerth defense. See Caen, 537 F. Supp. 2d at 477.

As to the second prong, it is undisputed that prior to Lelle's complaint to Mr. Cabrera in January 2005, none of the Plaintiffs objected to Mr. Kaiser's conduct, informed Mr. Kaiser that they believed he behaved inappropriately, asked him to stop, or otherwise complained to Mr. Cabrera,

16

Human Resources, or anyone else at TJX.[8]   (Supp. 56.1 Stmt. ¶ 11; 56.1 Stmt. ¶ 50, 57, 68).

Plaintiffs unreasonable failure to do so - particularly in light of the immediacy of TJX's response

once Lelle advised Mr. Cabrera - was the cause of their concerns not being addressed even sooner.

As such, Plaintiffs' failure to take advantage of the corrective measures provided by TJX, satisfying

the second prong of the Faragher/Ellerth defense, precludes any finding of liability against TJX.

See Sicular v. N.Y.C. Dep't of Homeless Servs., 2010 WL 423013, at *24 (S.D.N.Y. Feb. 4, 2010);

Vazquez v. Southside United Hous. Dev. Fund Corp., 2009 WL 2596490, at *16-18 (E.D.N.Y. Aug.

21, 2009); Stofsky v. Pawling Cent. Sch. Dist., 635 F. Supp. 2d 272, 295-96 (S.D.N.Y. 2009);

Divers v. Metro. Jewish Health Sys., 2009 WL 103703, at *17-18 (E.D.N.Y. Jan. 14, 2009), aff'd,

2010 WL 2640688 (2d Cir. 2010); Caen, 537 F. Supp. 2d at 477.

In sum, TJX had an extensive harassment prevention policy in place to prevent and correct

harassment in the workplace.  Plaintiffs were aware of the policy, and when Lelle complained in

January 2005, TJX immediately and effectively addressed and stopped any objectionable conduct.

TJX's actions were precisely the sort of responsible employer efforts that Title VII was designed to

encourage, Ellerth, 524 U.S. at 765, and under these circumstances, TJX cannot be held vicariously

liable for Mr. Kaiser's alleged conduct and is entitled to dismissal of Plaintiffs' claims.

> **D.     Plaintiffs' Hostile Work Environment Claims Against the Individual
> Defendants Must Be Dismissed**

Plaintiffs' claims against both Mr. Kaiser and Mr. Cabrera in their individual capacities must

be dismissed for a variety of reasons.  First, it is well-settled that Title VII does not provide for

individual liability.  See, e.g., Sassaman v. Gamache, 566 F.3d 307, 315 (2d Cir. 2009).

---

[8]     As noted above, while Plaintiffs' response to TJX's 56.1 Statement suggests that Serraino mentioned Mr.
Kaiser's comments in passing to Mr. DiGioia and Ms. Wachtell, even Serraino refused to characterize her discussion as
a complaint.  See footnote 6, *supra*.

Second, with respect to Mr. Cabrera specifically, Plaintiffs do not even allege that he engaged in any objectionable conduct, rendering any hostile work environment claim against him completely frivolous.  Indeed, all of the conduct alleged by Plaintiffs was by Mr. Kaiser.  The only evidence in the record concerning Mr. Cabrera's involvement in the facts related to Plaintiffs' hostile work environment claim is that he received Lelle's complaint in January 2005, he involved Human Resources, and he brought an end to the offending conduct.  (56.1 Stmt. ¶¶ 33-45).  For this reason, any hostile work environment claims against Mr. Cabrera must be dismissed.

Third, with respect to Mr. Kaiser, Plaintiffs' claims must be dismissed for the reasons set forth in Sections II.A-C., *supra*.  Specifically, Plaintiffs concede that they did not subjectively perceive Mr. Kaiser's conduct to create a hostile work environment, as they each admitted that the store had a "family atmosphere" and that, at worst, Mr. Kaiser's conduct was annoying.  (56.1 Stmt. ¶ 55, 61; Supp. 56.1 Stmt. ¶ 15, 17-18).  Further, the complained-of conduct itself cannot be characterized as objectively hostile given the wealth of case law holding that similarly juvenile and childish antics are insufficient to create a hostile work environment.  See, e.g., Vito, 2010 WL 681230, at *9-10; Nieves, 2009 WL 4281454, at *1-3; Alfano, 294 F.3d at 370.  Moreover, Plaintiffs concede that Mr. Kaiser's actions were not directed at them because of their gender.  (Supp. 56.1 Stmt. ¶¶ 2-3, 10).  Finally, Plaintiffs admit that they did not object to Mr. Kaiser's conduct directly to him or, for that matter, to anyone until January 2005 at which time he immediately stopped.  (Id. at ¶ 11; 56.1 Stmt. ¶ 50, 57, 68).  Accordingly, there is simply no basis for the imposition of individual liability.

## III.   PLAINTIFFS' RETALIATION CLAIMS MUST BE DISMISSED

Plaintiffs' retaliation claims stem from their allegations that their employment was terminated on June 23, 2005 in retaliation for Lelle's complaint about Mr. Kaiser and the remaining Plaintiffs' participation in the resulting investigation six months earlier.  (Am. Compl. Counts 2, 6,

10 and 14).  Plaintiffs' claims fail because: (i) there is no evidence even suggesting that TJX's Loss Prevention Department, which initiated the investigation into the layaway abuses that led to Plaintiffs' terminations, had any knowledge of Plaintiffs' protected activity; (ii) the six month gap between Plaintiffs' complaints and their termination precludes an inference of retaliation; (iii) other employees not involved in protected activity were similarly terminated because of their layaway abuse; (iv) neither Mr. Cabrera, Mr. Kaiser, nor Human Resources were involved in or aware of Loss Prevention's investigation of Plaintiffs until the day before Loss Prevention arrived at the store to question Plaintiffs; and (v) TJX policy provides that employees who violate TJX policies in a manner that causes financial loss to the store, as was the case here, are terminated automatically.

### A.   Applicable Standard

Plaintiffs' retaliation claims are subject to the three-step McDonnell-Douglas burden shifting analysis.  See, e.g., Fleming, 644 F. Supp. 2d at 263.  Thus, Plaintiffs must first establish a *prima facie* case by demonstrating with admissible evidence that: (i) they participated in a protected activity; (ii) their participation was known to the decision maker; (iii) they suffered an adverse employment action; and (iv) there is a causal connection between the protected activity and the adverse employment action.  See Fleming, 644 F. Supp. 2d at 264; Garone, 436 F. Supp. 2d at 464. If Plaintiffs establish their *prima facie* burden, the burden of production shifts to TJX to articulate a "legitimate nondiscriminatory reason" for its employment actions.  Marvelli v. Chaps Cmty. Health Ctr., 193 F. Supp. 2d 636, 654 (E.D.N.Y. 2002); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  TJX's burden is simply one of articulation - it is not required to prove the absence of a retaliatory motive in its decisions regarding Plaintiffs.  Marvelli, 193 F. Supp. 2d at 655. DiCola v. SwissRe Holding, 996 F.2d 30, 32 (2d Cir. 1993).

Once TJX proffers such a reason, "'the presumption raised by the *prima facie* case is rebutted,'" and "'drops from the case,'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993),

and Plaintiffs shoulder the ultimate burden of proving pretext.  However, a reason cannot be proved

to be a pretext for retaliation unless it is shown both that the reason was false, and that retaliation

was the real reason.  Id., 509 U.S. at 515.  Where, as here, the employer does more than merely

articulate a plausible non-discriminatory reason for its employment actions, and actually

"'substantiat[es] that reason by proving that it has a sound and factually supported basis,

[Plaintiffs'] task of showing that this reason was a pretext will be more difficult.'"  Halbrook v.

Reichhold Chems., Inc., 766 F. Supp. 1290, 1295 (S.D.N.Y. 1991) (citations omitted), aff'd, 956

F.2d 1159 (2d Cir. 1992).  Here, Plaintiffs' retaliation claims falter at each stage of the analysis.

    **B.**    **Plaintiffs' Retaliation Claims Should be Dismissed Because**
             **Plaintiffs Cannot Establish a *Prima Facie* Case of Retaliation**

           **1.**    **There is No Evidence that Any Decision-Makers Were**
                    **Aware of Plaintiffs' Protected Activity**

There is no dispute that Plaintiffs participated in protected activity, and that their

employment was terminated.  However, there is not a shred of evidence that any of the Loss

Prevention personnel that prompted Plaintiffs' terminations were aware of their protected activity,

rendering Plaintiffs' allegations that they were terminated because of their protected activity a legal

and logical impossibility.  As such, Plaintiffs cannot establish a *prima facie* case as a matter of law.

See Sundaram v. Brookhaven Nat'l Labs., 424 F. Supp. 2d 545, 584 (E.D.N.Y. 2006).

The undisputed evidence in the record reveals only that Plaintiffs, Mr. Cabrera, and David

Del Vecchio and Fran Centrone - Human Resources personnel - were aware of Plaintiffs' protected

activity.  Specifically, Lelle complained to Mr. Cabrera, who in turn informed Mr. Del Vecchio and

Ms. Centrone.  (56.1 Stmt. ¶¶ 45-47).  Mr. Del Vecchio and Ms. Centrone interviewed each of the

Plaintiffs concerning the allegations against Mr. Kaiser.  (Id. at ¶ 47, 53, 59, 63-64).  There is no

evidence that Lelle's complaint, or the participation by the other Plaintiffs in the interviews with

Mr. Del Vecchio and Ms. Centrone, were shared with anyone else.

In contrast, the undisputed evidence reveals that TJX's Loss Prevention Department, and Bill Ahern in particular, was responsible for effecting Plaintiffs' terminations without knowledge of Plaintiffs' protected activity.  Specifically, Karen Hennessey, a Loss Prevention Analyst, identified a pattern in one of the routine layaway reports she reviewed as part of her job responsibilities.  (Id. at ¶ 94).  The local Loss Prevention personnel in turn initiated the investigation into Plaintiffs' violations of TJX's layaway policy.  (Id. ¶ 96).  There is no evidence that any of these individuals had any knowledge of Plaintiffs' protected activity months earlier or, for that matter, knowledge of Plaintiffs' identities given that the "layaway reports" generated during the investigation did not identify individuals by name but referred to employee numbers instead.  (Id. at ¶¶ 93, 95).  It is also undisputed that Mr. Cabrera did not participate in the investigation in any regard and that he did not even know the investigation was taking place until a day or two prior to the termination meetings with Plaintiffs.[9]  (Supp. 56.1 Stmt. ¶ 27).  As such, any attempt by Plaintiffs to attribute knowledge of their protected activity to the Loss Prevention agents that initiated and conducted the investigations that resulted in their terminations is nothing more than unsupported and rank speculation, which is wholly insufficient to overcome summary judgment.  See, e.g., Gordon v. Kings County Hosp. Ctr., 2000 WL 1868091, at *6 (E.D.N.Y. Oct. 25, 2000) (holding that a plaintiff cannot defeat summary judgment on a retaliation claim by speculating as to a decision-maker's awareness of protected activity).

Nor can Plaintiffs argue that that knowledge should be "imputed" to the Loss Prevention decision-makers because of Mr. Cabrera's and Human Resources' knowledge of Plaintiffs' protected activity, as courts have consistently rejected such arguments and held that a plaintiff "must demonstrate not only that [the defendant corporation] as an entity knew of [the plaintiff's]

---

[9]      There also is no evidence that Mr. Cabrera, Mr. Del Vecchio, Ms. Centrone or anyone else for that matter informed Mr. Ahern or anyone in TJX's Loss Prevention Department about Plaintiffs' protected activity.

engagement in the protected activities, but also that the actual decision-makers knew about her protected activities as well." Laurin v. Pokoik, 2005 WL 911429, at *5 (S.D.N.Y. Apr. 18, 2005); Murray v. Visiting Nurse Servs., 528 F. Supp. 2d 257, 271 (S.D.N.Y. 2007) ("[D]istrict courts have consistently held that, with regard to the causation prong of the *prima facie* standard, absent any evidence to support an inference that the decision-makers knew of plaintiff's complaints, plaintiff cannot rely on circumstantial evidence of knowledge as evidence of causation.").

As a final matter, Plaintiffs cannot contend that Mr. Cabrera was the decision-maker with respect to the termination of their employment in an effort to satisfy the awareness prong of their *prima facie* case. While Mr. Cabrera informed Plaintiffs of their terminations, he exercised no discretion in that regard. Rather, because the investigations revealed that Plaintiffs engaged in a practice that caused a loss to the store, their terminations were automatic rendering Mr. Cabrera a mere messenger without discretion in the decision - a fact that Plaintiffs do not dispute. (56.1 Stmt. ¶ 118).

Because Plaintiffs' terminations were the result of a Loss Prevention investigation that had no knowledge of Plaintiffs' protected activity, Plaintiffs cannot establish a prima facie case of retaliation and their claims should be dismissed. See Ragin v. E. Ramapo Cent. Sch. Dist., 2010 WL 1326779, at *25 (S.D.N.Y. Mar. 31, 2010) ("[S]he has failed to demonstrate that anyone involved in the decision . . . was aware that she had complained of sexual harassment. Without such proof, [her] claim must fail."); Almonord v. Kingsbrook Jewish Med. Ctr., 2007 WL 2324961, at *10 (E.D.N.Y. Aug. 10, 2007) (same); Sundaram, 424 F. Supp. 2d at 584; Rumala v. N.Y.C. Transit Auth., 2005 WL 2076596, at *17 (E.D.N.Y. Aug. 26, 2005) (same).

### 2.    Plaintiffs Cannot Establish a Causal Connection Between Their Protected Activity and Their Terminations

All apart from the utter lack of evidence even suggesting that Plaintiffs' terminations had anything to do with their protected activity, the passage of six months between the two events alone

precludes any causal connection.  Indeed, the courts of this Circuit have repeatedly held that the passage of even less than six months severs any causal connection.  See Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the [protected] activity and the alleged act of retaliation."); Sgarlata v. Viacom Inc., 2005 WL 659198 (S.D.N.Y. Mar. 22, 2005) ("[T]o establish a causal connection in satisfaction of a prima facie case [of retaliation]. . . . courts require a much closer nexus than the eight months that expired between Plaintiff's complaint and his eventual termination."); see also Shaner v. Synthes (USA), 204 F.3d 494, 505 (3d Cir. 2000) ("[T]he passage of a long period of time between protected activity and an alleged retaliatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period."); Kosehoff v. Henderson, 1999 WL 907546, at *16 (E.D. Pa. 1999) ("[I]f at least four months pass after the protected action, without employer reprisal, there is no inference of causation.").

Moreover, while the passage of six months is alone sufficient to sever any causal connection, it is also significant that two other employees who did not engage in any protected activity were terminated for the same reason as Plaintiffs.  Specifically, Carol Hobel and Phyllis Ferraro were each terminated on the same day as Plaintiffs for engaging in the very same layaway misconduct as Plaintiffs.[10]   (56.1 Stmt. ¶¶ 105, 111-112, 114).   It is well-settled that where employees that did not engage in any protected activity are also affected by an adverse employment action, the inference of retaliation is severed.  See, e.g., Santiago v. City of N.Y., 2009 WL 935720, at *13 (E.D.N.Y. Mar. 31, 2009) (dismissing retaliation claim and finding no causal connection where plaintiff could not demonstrate that "similarly situated employees who did not engage in protected activity were treated differently"); Butler v. Potter, 2009 WL 804722, at *11 (E.D.N.Y. Mar. 26, 2009) (same).  Plaintiffs' retaliation claims fail for these reasons as well.

---

[10]     Ferraro actually resigned by abandoning her position before she could be terminated.  (56.1 Stmt. ¶ 112).

**C.     TJX Terminated Plaintiffs' Employment for the Legitimate and Non-
        Retaliatory Reason That They Violated TJX's Layaway Policy**

Even if Plaintiffs could establish a *prima facie* case – they cannot – TJX nevertheless

establishes a legitimate and non-retaliatory reason for their termination: Plaintiffs were terminated

after the discovery of their admitted violations of TJX's layaway policy by "rolling over" items on

layaway beyond the 30-day limit, taking advantage of price reductions, and causing a financial loss

to the store by preventing that merchandise from being sold for full-price.  (56.1 Stmt. ¶¶ 101-104;

113-114; 117, 119).   It is well-settled that violation of internal company policies constitutes a

legitimate and lawful reason for terminating an employee.  See, e.g., Vinokur v. Sovereign Bank,

2010 WL 1223320, at *12 (E.D.N.Y. Mar. 22, 2010) (holding policy violation to constitute

legitimate non-retaliatory reason); Missick, 2010 WL 1655446, at *8 (same); Dorcely v.

Wyandanch Union Free Sch. Dist., 665 F. Supp. 2d 178, 196 (E.D.N.Y. 2009) (same).

**D.     There is No Evidence of Pretext or that Retaliation Was, In Fact, the
        Reason Plaintiffs Were Terminated**

Given the dearth of evidence supporting any connection between any protected activity and

Plaintiffs' terminations, Plaintiffs are simply unable to establish pretext.  See St. Mary's Honor Ctr.,

509 U.S. at 515.  Presumably, Plaintiffs will attempt to rely on the temporal proximity between their

complaints in January 2005 and their terminations on June 23, 2005.  However, all apart from the

fact that the gap in time is insufficient to establish a causal connection in the first place (*supra* at 23-

24), it is well-settled that temporal proximity alone is insufficient to establish pretext or survive

summary judgment.  See Simpson v. N.Y. State Dep't of Civ. Servs., 166 Fed. Appx. 499, 502 (2d

Cir. 2006) (summary order) ("While temporal proximity . . . [may give] rise to an inference of

retaliation for the purposes of [plaintiff's] prima facie case, without more, such temporal proximity

is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext."); Vinokur,

2010 WL 1223320, at *12 (same); Galimore v. CUNY, 641 F. Supp. 2d 269, 289 (S.D.N.Y. 2009)

(same); Fleming, 644 F. Supp. 2d at 265 (two months between protected activity and termination insufficient to demonstrate pretext).

Nor can Plaintiffs offer any evidence that the reason advanced by TJX for Plaintiffs' termination - their violations of the layaway policy - is false.  See Marvelli, 193 F. Supp. 2d at 655 (dismissing retaliation claim where plaintiffs could not establish that articulated reason for their termination was false).  Indeed, each Plaintiff admitted to engaging in the very conduct that comprised a violation of the layaway policy and caused a financial loss to the store.[11]  (56.1 Stmt. ¶¶ 113-114).  Under such circumstances, Plaintiffs cannot demonstrate pretext nor avoid dismissal of their claims.  See, e.g., Patterson, 2000 WL 666337, at *5; Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 291 (S.D.N.Y. 1999) ("Plaintiff's admission that his behavior constituted misconduct defeats his retaliation claim."), aff'd, 2000 U.S. App. LEXIS 1859 (2d Cir. 2000).

At bottom, the courts have made clear that Title VII is not intended "to arm employees with a tactical coercive weapon that may be turned against the employer as a means for the asserted victims…to escape appropriate disciplinary measures."  Silva v. Peninsula Hotel, 509 F. Supp. 2d 364, 386 (S.D.N.Y. 2007); see also Pulley v. KPMG Consulting, Inc., 348 F. Supp. 2d 388, 397 (D. Md. 2004) (dismissing retaliation claim, and holding that Title VII "cannot be used as a shield to protect an employee from the consequences of inappropriate behavior that is incontrovertibly below the reasonable expectations of his employer"), aff'd, 183 Fed. Appx. 387 (4th Cir. 2006).  Here, there is no evidence beyond pure speculation that Plaintiffs were terminated for anything other than their admitted violations of TJX's layaway policy.  The fact that they happened to have been

---

[11]     We note that Plaintiffs contend that the written statements wherein they admit that they engaged in conduct violative of TJX's layaway policies, were procured by duress, coercion and by fraudulent inducement.  (Am. Compl. Counts 3, 4, 7, 8, 11, 12,15 and 16).  Even conceding these allegations, which TJX does not for the reasons set forth in Sections IV. and V., infra, at their depositions, Plaintiffs each nevertheless admitted to "rolling over" items on layaway and taking advantage of price reductions while those items were on layaway.  (56.1 Stmt. ¶ 113).  Accordingly, Plaintiffs cannot contend that their admitted misconduct was a pretextual reason for their terminations.  See, e.g., Patterson, 2000 WL 666337, at *5 (dismissing claim at pretext stage where plaintiff admitted to engaging in the very conduct that was advanced as the reason for his termination).

involved in a complaint six months earlier - one promptly investigated and resolved – is insufficient to create a retaliation claim.  As such, TJX respectfully requests that Plaintiffs' retaliation claims be dismissed in their entirety.

> **E.      There is No Basis for a Retaliation Claim Against the Individual Defendants.**

Plaintiffs' claims against Mr. Kaiser or Mr. Cabrera fail as well.  First, as set forth above, it Title VII does not provide for individual liability.  See, e.g., Sassaman, 566 F.3d at 315.  Second, in addition to the reasons set forth above (*supra* at 21-26), with respect to Mr. Kaiser, there is absolutely no evidence in the record - at all - that Mr. Kaiser played any role in the investigation of Plaintiffs' layaway abuses, that he even knew that they were being investigated, or that he played any role in their terminations.  (56.1 Stmt. ¶¶ 118).  Under such circumstances, there is simply no basis for a retaliation claim against Mr. Kaiser.  Finally, with respect to Mr. Cabrera, it is equally undisputed that he had no knowledge that Plaintiffs were being investigated until the day before their terminations, and, while Mr. Cabrera did inform each Plaintiff of her termination, Mr. Cabrera exercised no discretion in this regard, as Plaintiffs' admitted violation of a policy that caused financial loss to the store effected an automatic termination by operation of TJX policy.  (Id.).  As such, Plaintiffs' claims against Mr. Cabrera must be dismissed for this reason as well.

**IV.      PLAINTIFFS' KITCHEN SINK CLAIMS FOR "DURESS AND COERCION" SHOULD BE DISMISSED**[12]

Plaintiffs advance claims against TJX and Mr. Cabrera for "unlawful use of duress and coercion" and contend that they were subjected to "unlawful harassment, intimidation, mental distress, economic distress, undue influence, and coercion" in having to sign admissions of

---

[12]      By Stipulation of Partial Dismissal dated August 9, 2010, Plaintiffs dismissed these claims against Defendant Mr. Kaiser.  (See Docket Entry No. 64).

wrongdoing and promissory notes in favor of TJX during their termination meetings on June 23, 2005.  (Am. Compl. Counts 3, 7, 11, 15).  These claims fail as a matter of law.

As an initial matter, there simply is no common law claim for duress or coercion under New York law.  Rather, claims of duress and coercion arise only in the context of a defense to a contract claim by a party seeking to avoid obligations under an agreement into which they entered.[13]  See, e.g., R. Haig, Comm. Litigation in New York State Courts, § 59:30 (2d ed. 2005).  As such, Plaintiffs' attempt to assert these claims as independent causes of action, as well as their associated claims for damages in the amount of $1,500,000 each (Am. Compl. ¶¶ 56, 87, 126, 167) are misplaced and should be dismissed out of hand.

Putting aside the invalidity of these claims as independent causes of action upon which recovery may be sought, it is notable that Plaintiffs could not succeed on these theories as a defense in any event.  Under New York law, the defense of duress requires a plaintiff to establish: (i) the existence of a threat; (ii) which was unlawfully made; (iii) which caused involuntary acceptance of contract terms; (iv) because the circumstances permitted no other alternative.  See, e.g., Cliffstar Corp. v. Alpine Foods, LLC, 2010 WL 1949588, at *1 (W.D.N.Y. May 13, 2010); Reddy v. Carpal Holdings, Ltd., 2010 WL 1379844, at *3 (S.D.N.Y. Mar. 31, 2010).  It is well-settled, however, that a claim for duress will not lie where there is a threat to take action which is legally permissible.  See Kamerman v. Steinberg, 891 F.2d 424, 431-32 (2d Cir. 1989); Lyons v. Lyons, 289 A.D.2d 902, 734 N.Y.S.2d 734, 736-37 (3d Dep't 2001).

Here, Plaintiffs' claims must be dismissed because there is no evidence in the record of any threat, unlawful or otherwise.  Specifically, while Plaintiffs allege in the Amended Complaint that there was a "threat of termination" of employment if they did not execute the admissions and the

---

[13]      To the extent that Plaintiffs intend these theories as a defense to TJX's counterclaims to enforce the promissory notes signed by Plaintiffs, the allegations should have been stated as affirmative defenses, not as civil claims.

promissory notes, (Am. Compl. ¶¶ 43, 83, 123, 163), Plaintiffs acknowledged that no such threats were made during their depositions.  Specifically, Serraino testified that when she asked what would happen to her employment, the only response was, "that is a very bold question to ask." (Supp. 56.1 Stmt. ¶ 23).  Honick testified that no threat concerning her employment was made.  (Id. at ¶ 24).  Connolly could not recall the substance of most of the conversations of her termination meeting, but certainly did not recall any threat being made.  (Id. at ¶ 25).  And finally, Lelle testified that the only thing that was "coercive" about the meeting was that the Loss Prevention agents began the meeting in a "friendly" manner but became more stern.  (Id. at ¶ 26).  In the absence of a threat, a claim for duress is not cognizable.  See, e.g., Reddy, 2010 WL 1379844, at *3 (dismissing duress defense where plaintiff failed to allege existence of unlawful threat).

Even if Plaintiffs had been threatened with a potential loss of employment, however, Plaintiffs' claims would still fail because the threat of loss of employment is not unlawful. "[W]here a plaintiff is an at-will employee, the threat of termination is never deemed coercive" or unlawful.  Hennigan v. Driscoll, 2009 WL 3199220, at *9 (N.D.N.Y. Sept. 30, 2009) (citing Nocera v. N.Y. City Fire Comm'r, 921 F. Supp. 192, 201 (S.D.N.Y. 1996)); Brown v. Cushman & Wakefield, Inc., 2002 WL 1751269, at *15 (S.D.N.Y. July 29, 2002); Cacchioli v. Hoberman, 31 N.Y.2d 287, 291-92 (1972) (noting, with respect to a threat of termination of employment, that "[a] threat to do that which one has the legal right to do does not constitute duress or fraud.").  It is undisputed that each of the Plaintiffs were employed at-will such that even if a threat about loss of employment had been made, it would not support a duress "claim."  (Kesselman Decl. Ex. J).

Finally, as to Mr. Cabrera, it is undisputed that he did not participate in the meetings conducted by Loss Prevention with each of the Plaintiffs.  (Supp. 56.1 Stmt. ¶ 27).  Rather, his involvement was limited to informing Plaintiffs that their employment was terminated after they

had already admitted to engaging in the layaway abuses.  (Id.).  For each of these reasons, Plaintiffs'

unlawful use of duress and coercion "claims" must be dismissed.

## V.    PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIMS MUST BE DISMISSED[14]

Plaintiffs also contend that TJX and Mr. Cabrera "fraudulently induced" them to sign

allegedly false statements of admission and promissory notes by promising them that their

employment would not be terminated in return.[15]  (Am. Compl. Counts 4, 8, 12 and 16).  To sustain

a claim for fraudulent inducement, Plaintiffs must establish that: (i) TJX made a knowing

misrepresentation of material fact; (ii) which was intended to deceive Plaintiffs to induce them to

act upon it; (iii) upon which Plaintiffs reasonably relied; and (iv) causing injury.  See, e.g., Maxim

Group LLC v. Life Partners Holdings, Inc., 690 F. Supp. 2d 293, 306-07 (S.D.N.Y. 2010); Ventur

Group, LLC v. Finnerty, 68 A.D.3d 638, 639, 892 N.Y.S.2d 69, 71 (1st Dep't 2009)).  At summary

judgment, Plaintiffs bear the burden of establishing each element of their fraud claims by clear and

convincing evidence.  See, e.g., Laugh Factory, Inc. v. Basciano, 608 F. Supp. 2d 549, 558

(S.D.N.Y. 2009).  Plaintiffs' claims should be dismissed for two reasons.

First, Plaintiffs cannot establish claims for fraudulent inducement because their employment

was at-will.  New York courts consistently hold in claims for fraudulent inducement that it is

unreasonable as a matter of law for a plaintiff to rely on promises of job security and future

employment where the plaintiff was employed at-will.  See Brady v. Calyon Sec. (USA), 406 F.

Supp. 2d 307, 316-17 (S.D.N.Y. 2005) ("Because an at-will employee may be terminated at any

time, any reliance on any representations of future intentions, such as job security or in this case,

future changes, is deemed unreasonable as a matter of law."); Meyercord v. Curry, 38 A.D.3d 315,

---

[14]    By Stipulation of Partial Dismissal dated August 9, 2010, Plaintiffs dismissed these claims against Defendant Mr. Kaiser.  (See Docket Entry No. 64).

[15]    Lelle did not execute a promissory note and is thus not advancing her claim (Count 12) with respect to a promissory note.

316, 832 N.Y.S.2d 29, 31 (1st Dep't 2007); see also Morris v. Ales Group USA, Inc., 2007 WL 1893729, at *6 (S.D.N.Y. June 29, 2007); Chimarev v. TD Waterhouse Inv. Servs., Inc., 280 F. Supp. 2d 208, 216 (S.D.N.Y. 2003), aff'd, 99 Fed. Appx. 259 (2d Cir. 2004). Here, there is no dispute as to Plaintiffs' at-will employment status, defeating these claims. (Kesselman Decl. Ex. J).

Second, as set forth above in Section IV., *supra*, and irrespective of the conclusory allegations in the Amended Complaint, each Plaintiff testified at length about their meetings with Loss Prevention but not one of the them testified that they were promised that their employment would not be terminated in exchange for preparing and signing the admissions or the promissory notes. (Supp. 56.1 Stmt. ¶¶ 23-26). By Plaintiffs' own admissions, there were no misrepresentations of material fact for them to even rely upon. Because this is an element of Plaintiffs' claims that must be established by clear and convincing evidence to survive summary judgment, their claims should be dismissed on this basis alone. See, e.g., Maxim Group, 690 F. Supp. 2d at 306-07.

## CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that the Court enter an Order: (i) granting Defendants' Motion for Summary Judgment and dismissing Plaintiffs' Amended Complaint in its entity; and (ii) awarding such further relief as the Court deems just and proper.

Dated: New York
        September 7, 2010

Respectfully submitted,

SEYFARTH SHAW LLP

/s/ Dov Kesselman
Dov Kesselman
Brian D. Murphy
620 Eighth Avenue, 32nd Floor
New York 10018
(212) 218-5500

12534811v.7