UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   E-FILED

EILEEN CONNOLLY, PAULETTE HONICK,
DARLENE LELLE, and LORRAINE SERRAINO,

                         Plaintiffs,

       v.

THE TJX COMPANIES, INC., RICK KAISER, and
ARMANDO CABRERA,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07-CIV-3282 (JS) (WDW)


## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT


Dated: New York, New York
       October 18, 2010


*Of Counsel*:

    Dov Kesselman
    Brian D. Murphy


SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

*Attorneys for Defendants*
*The TJX Companies, Inc., Rick Kaiser and Armando Cabrera*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ......................................................................................................... 2

    I.    PLAINTIFFS' OPPOSITION IS PROCEDURALLY DEFICIENT ..................... 2

        A.    Plaintiffs' Response to Defendants' Rule 56.1 Statement Confirms that There are No Material Disputed Issues of Fact. ................................ 2

        B.    The Affidavits Submitted by Plaintiffs in an Effort to Create the Illusion of an Issue of Fact are Invalid and Should be Disregarded ........... 3

    II.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED ........................................................................................ 5

        A.    Plaintiffs Cannot Escape that the Complained-of Conduct Was Not Gender Based, Ending Any Further Inquiry ............................................ 5

        B.    Plaintiffs Cannot Establish that Mr. Kaiser's Conduct was Either Severe Or Pervasive ........................................................................... 7

            1.    The Second Circuit Caselaw Continues to Compel Dismissal of This Case ............................................................ 7

            2.    Plaintiffs Ignore Their Own Testimony Conclusively Establishing That Their Work Environment Was Not Subjectively Hostile ............................................................. 10

        C.    Plaintiffs Misrepresent the Immediate and Effective Remediation of Their Complaint by TJX, and TJX Is Entitled to Dismissal on that Basis as Well ................................................................................ 11

    III.    PLAINTIFFS' RETALIATION CLAIMS MUST BE DISMISSED ................... 14

        A.    Plaintiffs Cannot Establish a *Prima Facie* Case of Retaliation ................ 14

            1.    Plaintiffs Fail to Offer Any Evidence that TJX's Investigators Who Prompted Plaintiffs' Automatic Terminations Were Aware of Plaintiffs' Complaints, Dooming Their Retaliation Claims. ............................................. 14

            2.    Plaintiffs' Reliance on the Timing of the Investigation Is Misplaced. ................................................................................ 15

i

3.    Plaintiffs' Attempt to Ignore the Undisputed Evidence That Other Employees Who Did Not Complain Were Also Terminated. ...................................................................................15

B.    Plaintiffs' Myriad Theories Fail to Offer Any Evidence of Pretext. .........16

C.    Plaintiffs Fail to Submit Any Evidence of Retaliation By Mr. Kaiser and Mr. Cabrera, And Those Claims Must Therefore be Dismissed ....................................................................................................18

IV.    PLAINTIFFS OFFER NOTHING TO SUPPORT THEIR "DURESS AND COERCION" AND FRAUDULENT INDUCEMENT CLAIMS...............19

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">CASES</span>

Alfano v. Costello,
   294 F.3d 365 (2d Cir. 2002)...................................................................................8, 9

Alleva v. New York City Dep't of Inv.,
   696 F. Supp. 2d 273 (E.D.N.Y. 2010) ...................................................................4

Blanc v. Sagem Morpho, Inc.,
   2009 WL 1813236 (E.D.N.Y. June 25, 2009) .......................................................12

Bronner v. Catholic Charities,
   2010 WL 981959 (N.D.N.Y. Mar. 15, 2010) ........................................................18

Butler v. Potter,
   2009 WL 804722 (E.D.N.Y. Mar. 26, 2009) ........................................................15

Butts v. City of New York Dep't of Housing Preservation & Dev.,
   990 F.2d 1397 (2d Cir. 1993)...............................................................................13

Candid Prods. v. SFM Media Serv. Corp.,
   51 A.D.2d 943, 381 N.Y.S. 2d 290 (1st Dept. 1976)...........................................19

Carter v. Potter,
   2008 WL 1848639 (E.D.N.Y. Apr. 23, 2008) ......................................................18

Casciani v. Nesbitt,
   659 F. Supp. 2d 427 (W.D.N.Y. 2009) ..................................................................7

County of Suffolk v. LILCO,
   907 F.2d 1295 (2d Cir. 1990).................................................................................7

Feingold v. New York,
   366 F.3d 138 (2d Cir. 2004)...................................................................................9

Ghaly v. U.S. Dep't of Agr.,
   2010 WL 3613955 (E.D.N.Y. Sept. 16, 2010) .....................................................15

Gorman-Bakos v. Cornell Co-op Ext.,
   252 F.3d 545 (2d Cir. 2001)................................................................................15

Griffin v. TNT Intern. Express,
   2008 WL 697680 (S.D.N.Y. Mar. 12, 2008) .......................................................12

Harris v. Forklift Sys.,
   510 U.S. 17 (1993)...............................................................................................11

Hayes v. New York City Dep't of Corr.,
    84 F.3d 614 (2d Cir. 1996)........................................................................................6

Heba v. N.Y. State Div. of Parole,
    537 F. Supp. 2d 457 (E.D.N.Y. 2007) ......................................................................6

Kaytor v. Elec. Boat Corp.,
    609 F.3d 537 (2d Cir. 2010)......................................................................................8

Knight v. New York City Hous. Auth.,
    2007 WL 313435 (S.D.N.Y. Feb. 2, 2007)...............................................................3

Krasner v. HSH Nordbank AG,
    680 F. Supp. 2d 502 (S.D.N.Y. 2010)......................................................................7

Laurin v. Pokoik,
    2005 WL 911429 (S.D.N.Y. Apr. 18, 2005)...........................................................14

Liefer v. N.Y.S. Div. of Parole,
    2010 U.S. App. LEXIS 17646 (2d Cir. Aug. 23, 2010)...........................................9

Lucas v. S. Nassau Cmty. Hosp.,
    54 F. Supp. 2d 141 (E.D.N.Y. 1998) ......................................................................10

McKenzie v. Gibson,
    2010 WL 3528922 (S.D.N.Y. Aug. 24, 2010)........................................................14

Miller v. Edward Jones & Co.,
    355 F. Supp. 2d 629 (D. Conn. 2005)................................................................12, 13

MLB Props., Inc. v. Salvino, Inc.,
    542 F.3d 290 (2d Cir. 2008)....................................................................................12

Murray v. Visiting Nurse Servs.,
    528 F. Supp. 2d 257 (S.D.N.Y. 2007)....................................................................14

Patterson v. CBS, Inc.,
    2000 WL 666337, (S.D.N.Y. May 22, 2000) .........................................................18

Pocino v. Culkin,
    2010 WL 3516219 (E.D.N.Y. Aug. 31, 2010)........................................................15

Pucino v. Verizon Comms., Inc.,
    2010 WL 3191433 (2d Cir. Aug. 13, 2010)..............................................................8

Ragin v. East Ramapo Cent. Sch. Dist.,
    2010 WL 1326779 (S.D.N.Y. Mar. 31, 2010) ........................................................12

Romano v. Stora Enso Corp.,
    2010 WL 986535 (E.D.N.Y. Feb. 12, 2010)............................................................7

Rosinski v. American Axle & Mfg., Inc.,
    2010 WL 3402984 (2d Cir. Aug. 31, 2010)...............................................................................9

Santiago v. City of N.Y.,
    2009 WL 935720 (E.D.N.Y. Mar. 31, 2009).......................................................................15

Simpson v. Metro-North Comm. R.R.,
    2006 WL 2056366 (S.D.N.Y. July 20, 2006) ......................................................................12

Valentine v. Standard & Poor's,
    50 F. Supp. 2d 262 (S.D.N.Y. 1999)...................................................................................18

Walder v. White Plains Bd. of Edu.,
    2010 WL 3724464 (S.D.N.Y. Sept. 24, 2010).....................................................................15

Wells-Williams v. Kingsboro Psych. Ctr.,
    2007 WL 1011545 (E.D.N.Y. Mar. 30, 2007) ......................................................................6

**STATUTE**

28 U.S.C. § 1746.................................................................................................................1, 4

**RULES**

Fed. R. Civ. P. 56(e) ..............................................................................................................3

Local Rule 56.1 ......................................................................................................................3

Defendants The TJX Companies, Inc. ("TJX"), Rick Kaiser and Armando Cabrera (collectively, "Defendants") respectfully submit this Reply Memorandum of Law in Support of their Motion for Summary Judgment dismissing Plaintiffs' Amended Complaint in its entirety.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition attempts to create the illusion that they were subjected to daily, if not hourly, harassment at the hands of Rick Kaiser.  It does this by taking the few isolated comments that Defendants have laboriously compiled in the 56.1 Statement, and simply repeating them multiple times while adding in large doses of unsubstantiated editorializing about how these comments happened all the time.  When all of the rhetoric is tested against the evidentiary record, however, the illusion falls apart.

Indeed, it is clear that Plaintiffs hope that the Court will be so overwhelmed by the story told in exaggerated form – largely without any citation to the record – that the Court will simply throw up its hands and find that there must be an issue of fact.  Plaintiffs submit nine affidavits in the similar hope that it will appear that issues of fact must abound.  Yet, a review of those affidavits reveals that not only are most inadmissible as a matter of law as they fail to comply with the most basic elements of 28 U.S.C. § 1746, but they do not expand upon the material undisputed facts that have already been established.  Defendants submit that when the Court peels away the hyperbole that runs throughout Plaintiffs' Opposition and examines the record evidence, the lack of merit to Plaintiff's claims will be abundantly clear.  Similarly, Plaintiffs' suggestions of a sea-change in Second Circuit law is simply untrue, and the "trilogy" of cases cited by Plaintiff represents nothing more than the application of the same standards to far more serious allegations of harassment.

---

[1]     Throughout this Reply, Defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts will be referred to herein as "56.1 Stmt.," and Defendants' Supplemental 56.1 Statement will be referred to as "Supp. 56.1 Stmt."  References to such 56.1 Statements will automatically refer as well to Plaintiffs' Responses to the 56.1 Statements.  Defendants' initial Memorandum of Law in Support of Their Motion for Summary Judgment will be referred to herein as "Def. Mem."; and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment will be referred to herein as "Pl. Opp."

Plaintiffs' retaliation claims fare no better.  Indeed, Plaintiffs' opposition confirms that there is no evidence that <u>anyone</u> in the Loss Prevention Department - the individuals responsible for Plaintiffs' terminations - had any knowledge of Plaintiffs' complaints.  Against this undisputed lack of knowledge, Plaintiffs' view of the temporal proximity as "suspicious" is insufficient to withstand summary judgment.  As for pretext, Plaintiffs desperately try to throw up any and every specious argument to salvage their retaliation claims, but the evidence simply does not support their theories.

In the end, Plaintiffs were granted broad freedom to allege claims in their Complaint and to obtain exhaustive discovery to uncover any evidence that might establish those claims.  That process has taken place.  The fully-developed evidentiary record makes clear that there is simply no legally supportable claim, and Plaintiffs are not permitted to avoid summary judgment by submitting the same kind of unsupported allegations and conclusory arguments that littered their Complaint.  Defendants respectfully request that upon the Court's review of the evidence, it grant their motion for summary judgment in its entirety.

## ARGUMENT

### I.      PLAINTIFFS' OPPOSITION IS PROCEDURALLY DEFICIENT

#### A.      Plaintiffs' Response to Defendants' Rule 56.1 Statement Confirms that There are No Material Disputed Issues of Fact

In Plaintiffs' response to TJX's initial 56.1 Statement, Plaintiffs acknowledged that 87 of the 118 paragraphs set forth therein were "undisputed," but of the remaining 31 paragraphs that were disputed in whole or in part, failed to offer any specific evidence allegedly supporting the grounds for their dispute.  (Docket Nos. 45, 69.)  In response to TJX's Supplemental Statement of Facts (Docket No. 70), Plaintiffs either purport to dispute the facts without reference to any evidence in the record (Docket No. 77 ¶¶ 2, 3, 5, 10, 12), or in other instances, rely on various affidavits that are ultimately invalid for the reasons discussed in Section I(B) below.  (Docket No. 77 ¶¶ 6, 8-9, 16,

18-19, 21, 24-27.)[2]  As to Plaintiffs' remaining efforts to dispute the facts, the evidence cited to by Plaintiffs simply does not support the facts for which they are cited.

The Federal Rules of Civil Procedure and Local Rule 56.1 require that each numbered paragraph in TJX's 56.1 Statements of Undisputed Facts be deemed admitted unless "specifically controverted by a correspondingly numbered paragraph" and "*followed by citation to evidence which would be admissible*" in accordance with FED. R. CIV. P. 56(e).  See L.R. 56.1(b)-(d) (emphasis added).  At the very outset then, Plaintiffs' failure to controvert these facts by reference to specific evidence in the record compels that such facts be deemed admitted.  See Knight v. N.Y. City Hous. Auth., 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007).

**B.      The Affidavits Submitted by Plaintiffs in an Effort to Create the Illusion of an Issue of Fact are Invalid and Should be Disregarded**

Plaintiffs only compound their failure to properly respond to Defendants' 56.1 Statements by submitting a host of affidavits that are invalid as a matter of law.  Specifically, in addition to their own affidavits, Plaintiffs attempt to oppose TJX's Motion with "affidavits" – which are actually nothing more than notarized statements attached by Plaintiffs to a cover page that calls it an affidavit – from former employees Dawnmarie Serraino (Plaintiff Serraino's daughter), Lauren O'Malley, Anthony Crasa, Phyllis Ferraro, and Carol Hobel.  Even a glance at these affidavits, only four of which were actually hand-signed by the "affiant," put their credibility into question.[3]  More

---

[2]      Plaintiffs oddly contend that TJX's Supplemental Statement of Facts should be disregarded because it was "filed before Plaintiffs [sic] opposition was due." (Pl. Opp. 15-16.)  Aside from this being the standard procedure in most courts - that is, filing a Local Rule 56.1 Statement contemporaneously with the filing of the accompanying motion - TJX sought and received permission from the Court to submit the Supplemental Statement of Facts precisely in this way.  (Order dated August 2, 2010, relating to Docket No. 61.)

[3]      Defendants' note that Plaintiffs' and Dawnmarie Serraino's affidavits are not signed by them, but instead indicates her alleged assent to the statements therein by a typewritten "S/" which is appropriate only for attorneys registered to use the Court's ECF Filing System.  On October 8, 2010 – nine days after their purported electronic signature – Plaintiffs served a "courtesy copy" of their papers, and this version has hand-signed affidavits from some of the "affiants" purportedly as of the same date, raising serious questions as to authenticity of the filed affidavits.

importantly, the so-called affidavits do not even remotely comply with 28 U.S.C. § 1746, which

provides:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> ***
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746.  The courts of this district interpreting this provision have insisted that

"substantially" complying with 28 U.S.C. § 1746 requires, at a minimum, that the affiant

acknowledge that the statements in the affidavit are being made under "penalty of perjury."  See,

e.g., Alleva v. New York City Dep't of Inv., 696 F. Supp. 2d 273, 278-79 (E.D.N.Y. 2010).

None of the "affidavits" submitted by Plaintiffs even approach these minimum standards.

The O'Malley Affidavit (Docket No. 85) is simply a notarized letter "To Whom it May Concern"

and is neither sworn nor states that it was made under penalty of perjury.  The Affidavits of Hobel

and Ferraro (Docket Nos. 86-87) are deficient for the same reasons, and like the O'Malley and

Crasa affidavits, appear to have been subsequently attached to a cover purporting to style the letters

as "affidavits."  Similarly, the affidavits of Crasa and Dawnmarie Serraino (Docket Nos. 83, 84),

and those of Plaintiffs (Docket Nos. 79-82) make no reference to 28 U.S.C. § 1746 nor are they

made under penalty of perjury.  As such, they must be disregarded in their entirety.[4]

---

[4]     As detailed below, the affidavits do not in any event provide any substantive basis to avoid summary judgment. In fact, the affidavits largely simply reiterate the same facts that Plaintiffs had already testified to (often even referencing the deposition pages) and which are already listed in Defendants' 56.1 Statements.

## II.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED

Plaintiffs' memorandum of law engages in an all out effort to exaggerate the facts related to their hostile work environment claim by referring to the same five isolated incidents of inappropriate behavior by Kaiser in a three-year period, but repeating these same incidents continuously and in a myriad of different ways in an effort to suggest to the Court that these incidents occurred over and over.  This simply contradicts their own deposition testimony.  (Supp. 56.1 Stmt. ¶¶ 1-9; 56.1 Stmt. ¶¶ 50-68.)  Indeed, contrary to the opposition's emotional characterizations, Plaintiffs' own deposition testimony and the <u>record evidence</u> reveal the reality: that while the five incidents occurred, Plaintiffs were nevertheless "happy" at the store until the moment of their termination (Supp. 56.1 Stmt. ¶ 18), "liked Rick [Kaiser]" (56.1 Stmt. ¶ 54), felt that Mr. Kaiser "was a very nice young gentlemen" (<u>id.</u> ¶ 19), that the environment at TJX remained a "family-like atmosphere" (56.1 Stmt. ¶¶ 55, 61; Supp. 56.1 Stmt. ¶¶ 15, 17), and that Mr. Kaiser's behavior was not based on Plaintiffs' gender.

### A.    Plaintiffs Cannot Escape that the Complained-of Conduct Was Not Gender Based, Ending Any Further Inquiry

Plaintiffs incredibly assert that Mr. Kaiser's conduct was directed only at women, (Pl. Opp. 18-21), despite a mountain of evidence demonstrating that his conduct was directed at male and female employees alike, and therefore not gender-based or actionable.  (Supp. 56.1 Stmt. ¶ 10.) Indeed, while Plaintiffs acknowledge that "[i]n order to show that the allegedly harassing conduct was motivated by gender . . . a plaintiff must show 'how the employer would have treated the plaintiff if of a different sex'" (Pl. Opp. 18), their own testimony shows that Mr. Kaiser treated 'members of a different sex' in precisely the same way: Plaintiffs actually highlight for the Court that Mr. Kaiser also directed his comments to Dylan Kowalcheck, a male.  (Pl. Opp. 11.)  Plaintiffs

also simply ignore their repeated admissions under oath that Mr. Kaiser did <u>not</u> direct his remarks or

conduct to females in particular.  For instance, Plaintiff Serraino testified:

> Q.   Do you know if they were ever directed towards anybody?
> A.   Just in - no, just in general, just telling the joke.
>                        ***
> Q.   And who would he talk to about the box [of men's underwear]?
> A.   Anybody.  Any associates, he would, you know…
> Q.   Male and female?
> A.   Yes.

(Serraino Dep. 134:10-13, 147:7-14.)   Likewise, Plaintiff Honick testified with respect to Mr.

Kaiser's "stuffing" comment:

> Q.   And who else was present in the back room?
> A.   Eileen, Darlene.
> Q.   Anybody else?
> A.   God, there was, but I can't - they were - Rob, Rob Marin, Jon Erik Campbell.
>                        ***
> Q.   Would Rick Kaiser make these comments to men as well?
> A.   He made comments to the part-time boys.
>                        ***
> Q.   Do you believe that Rick Kaiser treated you differently because you were a woman?
> A.   No.

(Honick Dep. 141:10-16, 145:13-16, 149:6-9.)  Plaintiff Lelle also testified that Mr. Kaiser made a

comment about the size of a woman's bra to her husband.  (Lelle Dep. 137:4-17.)[5]  These

admissions prevent Plaintiffs from establishing that Mr. Kaiser's antics were directed at them

"because of" their gender.   <u>See</u> <u>Heba v. N.Y. State Div. of Parole</u>, 537 F. Supp. 2d 457, 467

(E.D.N.Y. 2007); <u>Wells-Williams v. Kingsboro Psych. Ctr.</u>, 2007 WL 1011545, at *4, 6 (E.D.N.Y.

Mar. 30, 2007); <u>see also</u> Def. Mem. 12-14 (citing cases).

---

[5]     Plaintiff Connolly, for her part, states in her affidavit that Mr. Kaiser's comments and actions were "sex based."  (Connolly Aff. 3.)  During her deposition, however, Plaintiff Connolly responded that she did not recall whether comments and actions were directed at men and women.  (Connolly Dep. 114:19-24).  Though this conflicting affidavit must be ignored as a matter of law, <u>Hayes v. N.Y. City Dep't of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996), it is yet another example of Plaintiffs' manufacturing of issues of fact.

Plaintiffs request that the Court overlook these telling admissions, repeatedly stating that they are entitled to the "favorable inference" that "the conduct was meant to affect women only." (Pl. Opp. 19.)  However, the "favorable inference" Plaintiffs request is contradicted directly by their own testimony.  While a non-movant is entitled to all inferences in opposing a motion for summary judgment, a non-movant is <u>not</u> entitled to an inference that is not supported by the record, much less one that is entirely contradicted by the record, as such an inference would be unreasonable.  <u>See County of Suffolk v. LILCO</u>, 907 F.2d 1295, 1318 (2d Cir. 1990) ("[I]n determining what may reasonably be inferred…[the nonmovant] 'is not entitled to the benefit of unreasonable inferences, or inferences at war with undisputed facts.'") (citation omitted), <u>aff'd</u>, 2010 U.S. App. LEXIS 18765 (2d Cir. 2010); <u>Casciani v. Nesbitt</u>, 659 F. Supp. 2d 427, 434 (W.D.N.Y. 2009) (same).

Because Plaintiffs' own deposition testimony establishes that Mr. Kaiser's comments were directed at men on equal terms with women, there can be no inference that Mr. Kaiser's comments were made "because of" Plaintiffs' gender and requires dismissal of their claim without further inquiry.  <u>See Romano v. Stora Enso Corp.</u>, 2010 WL 986535, at *19 (E.D.N.Y. Feb. 12, 2010); <u>Krasner v. HSH Nordbank AG</u>, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010).

**B.      Plaintiffs Cannot Establish that Mr. Kaiser's Conduct was Either Severe Or Pervasive**

**1.      The Second Circuit Caselaw Continues to Compel Dismissal of This Case**

Plaintiffs strikingly ignore the legion of caselaw cited by TJX, which individually and collectively makes clear that the handful of instances of conduct complained of here is wholly insufficient to be objectively hostile for purposes of a hostile work environment claim.  (Def. Mem. 6-12.)  Instead, Plaintiffs refer the Court to "the recent trilogy" of cases that, in Plaintiffs' opinion, suggest that the Second Circuit "has shifted to a more open view of workplace hostility."  (Pl. Mem. 6.)  Nothing could be further from the truth.  Indeed, <u>not a single one</u> of the cases cited by Plaintiff

suggest any change in the law  and each cite to the same standards that this Circuit has always subscribed to and upon which Defendants' motion is based.

Plaintiffs first cite to <u>Kaytor v. Elec. Boat Corp.</u>, 609 F.3d 537 (2d Cir. 2010) (Pl. Mem. 6-7), as suggesting a new view of the law, but it does nothing of the sort.  Instead, the Court's decision there was based on the lower court's failure to consider numerous egregious threats of violence by Plaintiff's supervisor, in addition to several sexually charged comments.  <u>Kaytor</u>, 609 F.3d at 539-40.  The Second Circuit's explicit reasoning for its decision was that:

> <u>even if overtly gender-based discriminatory conduct is merely episodic and not itself severe, the addition of 'physically threatening . . . behavior' may cause</u> "offensive or boorish conduct" to cross the line into "actionable sexual harassment."

<u>Id.</u> at 547 (emphasis added) (citation omitted).  In other words, the law remains that "episodic" and non-pervasive discriminatory conduct does not create a hostile work environment, but if that conduct is supplemented by "physically threatening behavior," then a hostile work environment claim can be made.  Indeed, the Court contrasted the facts of its case with those found insufficient in <u>Alfano v. Costello</u>, 294 F.3d 365 (2d Cir. 2002), which consisted of – like here – four incidents with sexual overtones but <u>without</u> any threats of violence.  <u>See id.</u> at 549.  There is <u>no</u> allegation of physical violence in the case at bar rendering <u>Kaytor</u> inapplicable.[6]

Plaintiffs' citation to <u>Pucino v. Verizon Comms., Inc.</u>, 2010 WL 3191433 (2d Cir. Aug. 13, 2010) is equally curious given that the issues there are not at issue here.  In <u>Pucino</u>, the Second Circuit addressed allegations that were primarily non-sexual in nature, but which the Court held could be considered so long as the conduct "<u>make[s] it clear that the harasser is motivated by general hostility to the presence of women in the workplace</u>."  <u>Id.</u> at *4 (emphasis added).  As such,

---

[6]      It is notable that the sexual comments in <u>Kaytor</u> were even more severe than those in the case at bar, as there the comments were specifically about the plaintiff herself, including comments about how she was "spreading [her] legs for the doctor," the supervisor was leering at her, and made comments about her body and "flat ass."  <u>Kaytor</u>, 609 F.3d at 540.  None of the Plaintiffs even suggest that Mr. Kaiser made any comments about them.

while the evidence did not include significant sexual content, it was replete with instances in which male supervisors forced women to work in more dangerous areas, refused to offer females help that was afforded to males, denied tools or trucks to women that were given to men, and referred to women as "bitch". Id. at *4-5.  This is a proposition of law with which Defendants do not disagree; however, here there is no suggestion that Mr. Kaiser (or TJX) was in any way "motivated by general hostility to the presence of women in the workplace," id. at *4, and thus Pucino has no application to the facts of this case.

Finally, Plaintiffs refer to Liefer v. N.Y.S. Div. of Parole, 2010 U.S. App. LEXIS 17646 (2d Cir. Aug. 23, 2010), which they describe as "[t]he most noteworthy ruling" of the three and "signal[ing] a new departure from previous analyses."  (Pl. Opp. 8.)  Liefer did no such thing, however, and it is indeed telling that the Court actually relies upon its earlier decision in Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) – in which the Second Circuit upheld summary judgment in a hostile work environment case.  See Liefer, 2010 U.S. App. LEXIS 17646, at *12.  In any event, the facts in Liefer are again markedly different from those presented here, involving allegations of religious discrimination, not sexual harassment.

And, making clear that there has been no shift in jurisprudence, less than two months ago - after each of the decisions cited by Plaintiffs - the Second Circuit upheld the grant of summary judgment in a hostile work environment case.  See Rosinski v. American Axle & Mfg., Inc., 2010 WL 3402984 (2d Cir. Aug. 31, 2010).  Because the cases relied upon by Plaintiff do not alter the Court's evaluation of the facts at issue here, and because a wealth of precedent establishes that Mr. Kaiser's handful of admittedly childish and unprofessional antics (Supp. 56.1 Stmt. ¶¶ 1-9) do not rise to the level of an objectively hostile work environment, Plaintiffs' hostile work environment claims cannot survive summary judgment.  See Alfano, 294 F.3d at 279-280.

### 2.      Plaintiffs Ignore Their Own Testimony Conclusively  Establishing That Their Work Environment Was Not Subjectively Hostile

Plaintiffs do not respond to the detailed references to their testimony establishing that not even they subjectively perceived their work environment as hostile as would be necessary to survive summary judgment.  (Pl. Opp. 14.)  Plaintiffs perhaps take this approach because their description of the store having a "family-like atmosphere" and being happy with their employment, (56.1 Stmt. ¶¶ 55, 61; Supp. 56.1 Stmt. ¶¶ 15, 17-18), is irreconcilable with any allegation that they subjectively perceived it as an environment "permeated with discriminatory intimidation, ridicule and insult." See, e.g.,  Lucas v. S. Nassau Cmty. Hosp., 54 F. Supp. 2d 141, 146 (E.D.N.Y. 1998) (Seybert, J.). And while Plaintiffs suggest that these descriptions applied only before Mr. Kaiser's arrival, the evidence reveals that suggestion to simply be without basis, as these were the descriptions Plaintiffs used during TJX's investigation into Lelle's complaint.  (56.1 Stmt. 49-62, 65-68; Supp. 56.1 Stmt. ¶¶ 15-22.)[7]

In an effort to avoid the impact of their testimony, Plaintiffs contend that their complaints to TJX are proof that they perceived the environment as hostile.  (Pl. Opp. 14.)  However, Plaintiffs misapprehend the nature of the inquiry on summary judgment.  A hostile work environment does not exist merely because an individual is annoyed or unhappy, nor even because they found the

---

[7]      Plaintiffs' misrepresentations of the record are perhaps most evident in their stunningly false quotations of the depositions of Mr. Kaiser and Mr. Cabrera to suggest that TJX's own managers admitted that there was a hostile work environment, which they characterize as "judicial admissions."  First, Plaintiffs argue that Mr. Cabrera admitted that Mr. Kaiser's conduct was "very severe."  (Pl. Opp. 5.)  However, Mr. Cabrera says nothing of the sort, and in fact testified that he took Plaintiff Lelle's complaint to him as being "very severe" and that in light of the severity of the complaint, he and TJX took it "very seriously."  (Cabrera Dep. 117:11-22.)  That is, Mr. Cabrera received Plaintiff Lelle's complaint and responded in precisely as the law requires.  Second, Plaintiffs represent to the Court that Mr. Kaiser allegedly admitted at his deposition that he had actually engaged in sexual harassment (Pl. Opp. 5), when in fact the words "sexually harassing" were Plaintiffs' counsel's words, and Mr. Kaiser merely admitted that a particular comment was sexually harassing (hardly a legal conclusion).  (Kaiser Dep. 51:21-24; 61:5-12.)  Similarly, while Plaintiffs contend that Mr. Kaiser admitted in the Corrective Action Form TJX issued to him during its investigation and remediation of Plaintiffs' complaints that he engaged in "sex harassment" (Pl. Opp. 5), Mr. Kaiser signed a form admitting only that he had "inappropriate conversations with associates of a sexual nature."  (Kesselman Decl. Ex. M.)  To be sure, Defendants do not dispute that the handful of comments were made.  However, those statements simply do not create a sexually hostile work environment as a matter of law.

particular comments made by Mr. Kaiser offensive; instead, the evidence must show that Plaintiffs subjectively perceived their work environment, <u>as a whole</u>, to be "permeated with 'discriminatory intimidation, ridicule, and insult" that was so "severe or pervasive" that it altered the conditions of their employment.  <u>Lucas</u>, 54 F. Supp. 2d at 146 (quoting <u>Harris v. Forklift Sys.</u>, 510 U.S. 17, 21 (1993)).  Plaintiffs' testimony – as contrasted with their memorandum of law – demonstrates, at best, annoyance with Mr. Kaiser on an occasional basis, particularly when juxtaposed with the Plaintiffs' uniform "family atmosphere" testimony, Plaintiff Connolly's testimony that she was happy working at TJX up until the moment of her termination, and Plaintiff Honick's testimony that she "liked" Mr. Kaiser.  (56.1 Stmt. ¶¶ 55, 61; Supp. 56.1 Stmt. ¶¶ 15, 17-18, 20.)  Because Plaintiffs offer nothing even remotely capable of supporting an inference that they perceived their environment as "permeated with 'discriminatory intimidation, ridicule and insult," Plaintiffs' claims must be dismissed.

### C.    Plaintiffs Misrepresent the Immediate and Effective Remediation of Their Complaint by TJX, and TJX Is Entitled to Dismissal on that Basis as Well.

Even if Plaintiffs could establish an actionable hostile work environment – they cannot – TJX still cannot be held liable because it exercised reasonable care and promptly and effectively responded to Plaintiffs' complaint.  (Def. Mem. 14-17.)  Plaintiffs do not appear to dispute these propositions of law, but instead contend that TJX is not entitled to the "safe-harbor" from liability because they urge that other complaints were made to TJX prior to Plaintiff Lelle's complaint in January 2005 and TJX failed to take corrective action in response to them.  (Pl. Opp. 11-12, 14.)  For the reasons that follow, Plaintiffs arguments are misplaced.

First, Plaintiffs rely on pure inadmissible hearsay in asserting that another former TJX employee, Dylan Kowalcheck, complained about Mr. Kaiser to an earlier District Manager.  Despite the number of affidavits submitted by Plaintiffs, they offer nothing from Mr. Kowalcheck, but instead attempt to support these allegations with a reference to Plaintiff Lelle's deposition (Pl. Opp.

11), in which she testified that Mr. Kowalcheck informed her that he complained about Mr. Kaiser (Lelle Dep. 428:18-23), though none of the Plaintiffs were present nor have any personal knowledge of this alleged complaint.  It is well settled that this kind of hearsay "evidence" is inadmissible and insufficient to create an issue of fact.  See, e.g., MLB Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008); Ragin v. E. Ramapo Cent. Sch. Dist., 2010 WL 1326779, at *26 (S.D.N.Y. Mar. 31, 2010) (refusing to consider hearsay evidence of another complaint by another teacher in connection with a sexual harassment claim).

Second, Plaintiffs now claim that Plaintiffs Connolly, Honick and Lelle complained to Assistant Manager Lori Wachtel about Mr. Kaiser.  (Pl. Opp. 11.)  With regard to Plaintiff Connolly, Plaintiffs offer no specifics as to the timing or substance of her alleged complaint, merely stating that she did so "often."  (Connolly Aff.)  This new affidavit is directly contradicted by her deposition testimony, in which Plaintiff Connolly refused to characterize her conversations with Ms. Wachtel as a complaint and testified only that she "spoke" with Ms. Wachtel.  (Connolly Dep. 159:19-161:12.)  Such informal conversations do not constitute a complaint.  Simpson v. Metro-North Comm. R.R., 2006 WL 2056366, at *10-11 (S.D.N.Y. July 20, 2006).  Likewise, Plaintiff Honick specifically admitted that she could not remember any specific incident or complaint that she made to Ms. Wachtel.  (Honick Dep. 129:3-18.)  Finally, Plaintiff Lelle conceded that she had no idea when she complained to Ms. Wachtel.  (Lelle Dep. 430:2-431:6.)  It is well-settled that vague and generalized complaints of mistreatment without specifics do not constitute complaints, and therefore does not defeat TJX's defense.  See, e.g., Blanc v. Sagem Morpho, Inc., 2009 WL 1813236, at *13 (E.D.N.Y. June 25, 2009), aff'd, 2010 WL 3836155 (2d Cir. 2010); Griffin v. TNT Int'l. Exp., 2008 WL 697680, at *13 (S.D.N.Y. Mar. 12, 2008); Miller v. Edward Jones & Co., 355 F. Supp. 2d 629, 643 (D. Conn. 2005).

Third, while Plaintiff Lelle contends that she complained to both Assistant Manager Yun Ngyuen and Assistant Manager Steve DeGioia about "remarks and behavior," her inability to articulate the substance or timing of the supposed complaint renders it insufficient for purposes of abrogating application of the "safe harbor" defense.  See, e.g., Miller, 355 F. Supp. 2d at 643.

Indeed, as to the only complaint as to which there is any evidence – Plaintiff Lelle's complaint to Mr. Cabrera in January 2005 – it is undisputed that TJX reacted as a model employer, and immediately investigated and stopped the conduct.  (Def. Mem. 14-17.)  Plaintiffs attempt to dispute this by arguing that Mr. Kaiser engaged in similar behavior after TJX's intervention.  (Pl. Opp. 12-13.)  Plaintiffs do so, however, only by mischaracterizing the record.  Plaintiffs first contend that "within a week after his apology," Kaiser made "some inappropriate remarks at a meeting."  (Id.)  However, Plaintiff Honick admitted that what actually happened was that Mr. Kaiser started to say something, but "caught himself" and ceased making any inappropriate comment.  (Honick Dep. 138:2-16.)  Likewise, though Plaintiffs assert that Mr. Kaiser "remarked that woman customer's breasts were huge" in an incident following his apology, (Pl. Opp. 12), Plaintiff Lelle actually testified that Mr. Kaiser began to say something, but "he caught Lorraine and I looking at each other, and then he kind of just stopped and that was that," (Lelle Dep. 202:6-13.)  In any event, both Plaintiff Serraino and Plaintiff Honick testified that Ms. Wachtel immediately intervened and counseled him about engaging in any behavior that could be perceived as inappropriate.  (Serraino Dep. 144:18-23; Honick Dep. 261:15-19.)  TJX's intervention had the precise effect the law requires and TJX is therefore entitled to the protection of Faragher/Ellerth.[8]

---

[8]    Notably, based on Plaintiffs' testimony, the last allegedly hostile comment was made "within a week" of Mr. Kaiser's public apology, which was held on February 1, 2005 (56.1 Stmt. ¶ 80), such that the last allegedly harassing comment was made no later than February 8, 2005.  Under Title VII, Plaintiffs would then have been obligated to file a Charge of Discrimination with the EEOC within 300 days of the last incident, or by December 4, 2005.  See Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).  Because Plaintiffs did not file their EEOC charges of discrimination until March 25, 2006 (Amended Complaint, ¶ 4), their Title VII hostile work environment claims are time barred.

III.   **PLAINTIFFS' RETALIATION CLAIMS MUST BE DISMISSED**

    A.    **Plaintiffs Cannot Establish a *Prima Facie* Case of Retaliation**

        1.    **Plaintiffs Fail to Offer Any Evidence that TJX's Investigators Who Prompted Plaintiffs' Automatic Terminations Were Aware of Plaintiffs' Complaints, Dooming Their Retaliation Claims**

The entirety of Plaintiffs' argument on their retaliation claim is that the timing between their complaints and their terminations establish causation. (Pl. Opp. 25-28.) Plaintiffs do not – because they cannot – contend that any of the Loss Prevention personnel that prompted their terminations were aware of their protected activity. (56.1 Stmt. ¶¶ 45-47, 53, 59, 63-64.) This alone compels dismissal of Plaintiffs' retaliation claims. (Def. Mem. 20-22.)

Plaintiffs briefly contend that Mr. Cabrera's knowledge of Plaintiffs' complaints is sufficient to establish the awareness prong of their prima facie case because he informed them of their terminations. (Pl. Opp. 26-27.) However, Plaintiffs support this argument only by reference to four pages of deposition testimony of Plaintiffs Lelle and Serraino, neither of which even mention Mr. Cabrera. (Pl. Opp. 27 (citing Lelle Dep. 238-39 and Serraino Dep. 197-98.)) To the extent that Plaintiffs request that the Court simply infer awareness on the part of the Loss Prevention personnel that prompted Plaintiffs' terminations, it is well-settled that such an inferential leap is impermissible on summary judgment. See McKenzie v. Gibson, 2010 WL 3528922, at *9 (S.D.N.Y. Aug. 24, 2010); Def. Mem. 21-22.[9] To the extent Plaintiffs point to the fact that Mr. Cabrera, who was aware of their complaints, informed them of their terminations and that this suggests retaliation, it is undisputed that their terminations were "automatic" for causing financial loss to the store and the

---

[9]    Similarly, to the extent Plaintiffs suggest that knowledge may be imputed to the Loss Prevention personnel that effected their terminations by virtue of TJX's corporate knowledge, we note that Plaintiffs did not respond to the cases holding that such imputations of knowledge are improper. See, e.g., Laurin v. Pokoik, 2005 WL 911429, at *5 (S.D.N.Y. Apr. 18, 2005); Murray v. Visiting Nurse Servs., 528 F. Supp. 2d 257, 271 (S.D.N.Y. 2007).

decision was not at Mr. Cabrera's discretion, removing any suggestion of retaliatory animus.  (See 56.1 Stmt.¶ 118.)[10]

### 2.    Plaintiffs' Reliance on the Timing of the Investigation Is Misplaced

Plaintiffs discount the nearly six months that elapsed from their protected activity until their terminations by contending that the process that led to their termination was initiated ten days after the protected activity.  (Pl. Opp. 26-27.)  However, it is well-settled that mere temporal proximity is insufficient to survive summary judgment in the absence of knowledge of the protected activity. See Walder v. White Plains Bd. of Edu., 2010 WL 3724464, at *14 (S.D.N.Y. Sept. 24, 2010); Ghaly v. U.S. Dep't of Agr., 2010 WL 3613955, at *13 (E.D.N.Y. Sept. 16, 2010); Pocino v. Culkin, 2010 WL 3516219, at *3 (E.D.N.Y. Aug. 31, 2010).   Indeed, while Plaintiffs cite to Gorman-Bakos v. Cornell Co-op Ext., 252 F.3d 545 (2d Cir. 2001), that case involved decision-makers who knew of the protected activity.  Id. at 554.

### 3.    Plaintiffs Ignore the Undisputed Evidence That Other Employees Who Did Not Complain Were Also Terminated

Plaintiffs do not even address the fact that Carol Hobel and Phyllis Ferraro were also terminated for engaging in the same layaway misconduct as Plaintiffs but did not participate in any protected activity.  (56.1 Stmt. ¶¶ 101, 105, 111-112, 114.)  This alone prevents Plaintiffs from establishing causation to survive summary judgment.  See, e.g., Santiago v. City of N.Y., 2009 WL 935720, at *13 (E.D.N.Y. Mar. 31, 2009); Butler v. Potter, 2009 WL 804722, at *11 (E.D.N.Y. Mar. 26, 2009).  And although Plaintiffs argue that other former TJX employees engaged in similar layaway abuses but were not terminated (Pl. Opp. at 26), they offer no evidence concerning the

---

[10]    Plaintiffs purport to dispute this fact without any factual basis, relying not on any evidence, but instead on the fact that "they believed that Cabrera was totally in charge" (Pl. Resp. to Supp. 56.1 Stmt. ¶ 27) (emphasis added) – in other words, rank speculation.

nature of those other alleged layaway violations, when they occurred, or whether TJX was aware of them, rendering the point without value.

**B.      Plaintiffs' Myriad Theories Fail to Offer Any Evidence of Pretext**

Plaintiffs attempt to establish pretext by arguing that there was no policy prohibiting their actions, and that in any event, no one ever told them otherwise.  Indeed, Plaintiffs boldly contend that "after years of litigation and discovery, [TJX is] still unable to produce a policy that shows that once cancelled, a layaway may not be restarted." (Pl. Opp. 26.)  This is simply false as the applicable policy is in evidence.  (Kesselman Decl. Ex. O.)  At page 32 of the policy, which is entitled "Layaway Procedures," the policy states: "Associate layaways cannot be extended."[11]  (Id.) And during their depositions, Plaintiffs expressly admitted that there was such a policy.  (56.1 Stmt. ¶¶ 82-86.)

Plaintiffs' reliance on the inadmissible affidavits of Anthony Crasa, Phyllis Ferraro, Carol Hobel, Lauren O'Malley, and Dawnmarie Serraino, who claim that they were unaware of any policy prohibiting the practice of repeatedly rolling over layaways to accumulate price reductions, offers no help either.  First, as noted above, these "affidavits" are simply invalid as a matter of law pursuant to 28 U.S.C. § 1746.  More importantly, the evidence establishes that the investigation was conducted by Loss Prevention, and not prompted by the local store (Hennessy Decl. ¶¶ 1-10), and therefore even if it were true that the local employees were unaware of a policy, or even if the local managers failed to enforce it, no pretext is created because it is undisputed what the Company's policy was and that Loss Prevention was very much aware of and enforced the policy.  (56.1 Stmt. ¶¶ 82-100.)

---

[11]      Plaintiffs apparently request that the Court engage in semantics, attempting to say that the policy is inapplicable because canceling a layaway and then restarting it somehow differs from extending it, as referenced in the layaway policy.  (Pl. Opp. 26.)  There is no support in the record for Plaintiffs' interpretation, and by its plain meaning, a policy that prohibits an associate from extending a layaway prohibits extending that layaway by any means. (Kesselman Decl. Ex. O.)

Second, Plaintiffs' contention that it is "suspicious" that Plaintiffs were not provided with written disciplinary warnings prior to being terminated is misplaced, as the evidence establishes that an employee's termination is automatic when that employee's misconduct causes a financial loss to the store.  (56.1 Stmt. ¶ 118; Cabrera 16:3-5; 149:12-17.)[12]

Third, Plaintiffs contend that other employees besides them engaged in layaway violations but were not terminated.  (Pl. Opp. 26.)  However, the only evidence in the record reveals that, in addition to Plaintiffs, Carol Hobel and Phyllis Ferraro were terminated for committing layaway violations and it is undisputed that neither of them participated in any complaints.  (56.1 Stmt. ¶¶ 105, 111-112, 114.)  As to the other employees named in the various inadmissible affidavits, Plaintiffs fail to provide any background substantiating the source of their personal knowledge, the extent, frequency, timing, or severity of their supposed conduct, and there is no evidence that TJX's investigators had any evidence of their supposed actions.

Under the heading "Circumstantial proof of Pretext and Retaliation," Plaintiffs also attempt to establish pretext by listing a number of "circumstances," but given the near-complete failure to reference any evidence supporting these propositions, they are nothing more than the unsupported musings of counsel.  (Pl. Opp. 27.)  For instance, Plaintiffs state that there was "no investigation of layaways of the several non-complaining employees" and that there were "[n]o consequences to several employees who rolled over layaways but did not complain."  (Pl. Opp. 27 ¶¶ E, M.)  This inaccuracy is easily addressed above, *supra* at 17.  Likewise, Plaintiffs contend that "[e]mployer builds paper trail to establish grounds for violation of company policy."  (Pl. Opp. 27 ¶ G.)

---

[12]    It should also be noted that Plaintiffs rely on "affidavit" of Anthony Crasa, the only affidavit that even marginally addresses discipline, which states only that "[t]o the best of [his] knowledge no TJ Maxx employee was ever terminated for violating an unknown store policy."  (Crasa Aff.).  Apart from the affidavit being simply inadmissible, it is hardly credible evidence of anything, as Mr. Crasa worked in only one TJX store and it is undisputed that Loss Prevention Department investigations are kept largely confidential and carried-out without the knowledge of store management. (Hennessey Decl. ¶ 6; Supp. 56.1 Stmt. ¶ 27.)  In any event, Mr. Crasa's vague affidavit does not address conduct causing financial loss, and is therefore inapposite.  (Crasa Aff.)

However, there is simply no evidence supporting this commentary.   (56.1 Stmt. ¶¶ 93-95.) Plaintiffs also contend that TJX's reasoning for their termination is faulty because "no loss ever occurred."  (Pl. Opp. 27 ¶ H.)  Plaintiffs' failure to understand the financial dynamics of removing an item from the sales floor and preventing it from being sold for full-price to a customer is not evidence.  Finally, Plaintiffs suggest that they were subjected to "withering and mentally brutal interrogation," (Pl. Opp. 27 ¶ J), but again do not reference the record precisely because Plaintiffs admitted in their depositions that they were not threatened during the interviews that they now contend were "brutal."  (Supp. 56.1 Stmt. ¶ 23-26.)[13]

Once the illusions advanced by Plaintiffs are tested against the record, all that remains are Plaintiffs' admissions that they engaged in the very misconduct for which TJX asserts they were terminated.   (56.1 Stmt. ¶¶  113-114.)  Given these admissions, their retaliation claims fail as a matter of law.  See, e.g., Patterson v. CBS, Inc., 2000 WL 666337, at *5 (S.D.N.Y. May 22, 2000); Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 291 (S.D.N.Y. 1999), aff'd, 2000 U.S. App. LEXIS 1859 (2d Cir. 2000).

### C.    Plaintiffs Fail to Submit Any Evidence of Retaliation By Mr. Kaiser and Mr. Cabrera, And Those Claims Must Therefore be Dismissed

Plaintiffs' concede that their Title VII claims against Mr. Kaiser and Mr. Cabrera must be dismissed, but pursue these claims under New York State law.  (Pl. Opp. 25, 28.)  With respect to Mr. Kaiser, Plaintiffs merely offer the conclusion that "Kaiser is, under state law, liable under an

---

[13]     As a final matter, Plaintiffs also contend that pretext can be found in TJX's opposition to their application for unemployment benefits and, specifically, in the statement Plaintiffs were terminated for "unlawfully removing property from the store."  (Pl. Opp, 27-28.)  Plaintiffs' theory is unclear, but to the extent it is based on the language used, the very evidence submitted by Plaintiffs shows that: (i) the language "unlawfully removing property from the store" was utilized by a company that TJX employed to handle benefits claims, and not by TJX itself; and (ii) the Administrative Law Judge made clear that TJX explained the reason for Plaintiffs' discharge as being because they "took items off [] layaway and purchased them at the discount price."  (Pl. Ex. 3.)  There is no evidence that TJX challenged their unemployment benefits for any reason other than its legitimate finding that Plaintiffs caused a financial loss to the store. See, e.g., Bronner v. Catholic Charities, 2010 WL 981959, at *12 (N.D.N.Y. Mar. 15, 2010) (dismissing retaliation claim premised on challenge to unemployment benefits).  In any event, an employer has an absolute right to challenge an application for unemployment benefits without running afoul of anti-retaliation laws.  See Carter v. Potter, 2008 WL 1848639, at *4 (E.D.N.Y. Apr. 23, 2008) (citing cases).

aiding and abetting theory" allegedly because Mr. Kaiser "went along with the whole deal."  (Pl. Opp. 28.)  Plaintiffs have adduced no evidence of Mr. Kaiser's involvement in TJX's investigation of their layaway abuses, no evidence demonstrating that he was aware they were being investigated, nor any evidence demonstrating that he played any role in their terminations.  (56.1 Stmt. ¶ 118.) Without such evidence, Plaintiffs' claim cannot survive summary judgment.

With respect to Mr. Cabrera, Plaintiffs merely speculate that Mr. Cabrera regarded them as "troublemakers" and that as a result they "were no longer wanted in the store."  (Pl. Opp. 28.) Aside from Plaintiffs' *opinion* of Mr. Cabrera's mindset, without any evidence of any action or comment that would substantiate it, Plaintiffs have adduced no evidence that Mr. Cabrera had any knowledge that they were being investigated until the day before their terminations.  (56.1 Stmt. ¶ 118.)  And while Mr. Cabrera informed them of their terminations, it is undisputed that their terminations were automatic, precluding any suggestion of retaliatory animus.  (Id.)  Accordingly, Plaintiffs' claims against the individual defendants must be dismissed.

## IV.   PLAINTIFFS OFFER NOTHING TO SUPPORT THEIR "DURESS AND COERCION" AND FRAUDULENT INDUCEMENT CLAIMS

Plaintiffs all but acknowledge that "duress and coercion" is not an actionable claim in and of itself and only arises as a defense to the enforceability of a contract (Pl. Opp. 29), and Plaintiffs' inability to cite a single case to support these claims or counter Defendants' arguments compels the dismissal of these claims.[14]  (Def. Mem. 26-29.)  Plaintiffs oddly suggest that their "real" claim is akin to one for intentional infliction of emotional distress (Pl. Opp. 29), but Plaintiffs withdrew all claims for intentional infliction of emotional distress when they filed their Amended Complaint, (Docket No. 58), after being forced to acknowledge that such claims were time-barred after a May 14, 2010 conference before the Court.  Finally, Plaintiffs do not even mention Mr. Cabrera in their

---

[14]     Plaintiffs cite <u>Candid Prods. v. SFM Media Serv. Corp.</u>, 381 N.Y.S. 2d 290 (1st Dep't 1976) (Pl. Opp. at 29), but that case makes Defendants' point – duress was merely a defense to a contract, <u>not</u> an independent claim.

Opposition, presumably withdrawing these claims against him in the face of the evidence that Mr. Cabrera did not participate in the meetings conducted by Loss Prevention, other than by informing Plaintiffs at the conclusion of the meetings that they were terminated.  (Supp. 56.1 Stmt. ¶ 27.)[15]

Plaintiffs similarly do not offer any case law, or any citation to the record, that could support their Fraudulent Inducement claims.  (Pl. Opp. 30.)  Plaintiffs' claims fail for the reasons previously set forth.  (Def. Mem. 29-30.)  Moreover, to the extent that Plaintiffs' real argument is that "TJX was able to induce [P]laintiffs to sign admissions and notes by reasonably relying on the belief their jobs would be saved" (Pl. Opp. 30), their claims are in the nature of a <u>defense</u> to TJX's counterclaims on the Promissory Notes, and not independent claims.

<u>CONCLUSION</u>

For each of the foregoing reasons, Defendants respectfully request that the Court enter an Order: (i) granting Defendants' Motion for Summary Judgment and dismissing Plaintiffs' Amended Complaint in its entity; and (ii) awarding such further relief as the Court deems proper.

Dated: New York, New York
          October 18, 2010

                                 Respectfully submitted,

                                 SEYFARTH SHAW LLP


                                 /s/ Dov Kesselman
                                 Dov Kesselman
                                 Brian D. Murphy
                                 620 Eighth Avenue, 32nd Floor
                                 New York 10018
                                 (212) 218-5500

---

[15]        To the extent Plaintiff asserts "duress and coercion" as a defense to enforcement of the Promissory Notes as part of TJX's Counterclaims, that argument is addressed in TJX's Memorandum of Law in Opposition to Plaintiffs' Cross-Motion for Summary Judgment.  Defendants note, however, that aside from blanket statements in Plaintiffs' memorandum of law that they were "worked over and harassed" during the interviews, Plaintiffs do not cite to any evidence nor dispute the facts referred to by Defendants in its initial memorandum, which demonstrate that Plaintiffs were not threatened or mistreated.  (Supp. 56.1 Stmt. ¶ 23-26; Def. Mem. 28.)